**TICO INSURANCE COMPANY**

v.

**William MARCH, Joseph McKeon and Lisa Ricci.**

**No. CIV. A. 00–CV–4119.**

United States District Court,
E.D. Pennsylvania.

Aug. 14, 2001.

Andrew J. Gallogly, Margolis, Edelstein & Scherlis, Philadelphia, PA, for Plaintiff.

Gregory B. Heller, Litvin, Blumberg, Matusow and Young, Philadelphia, PA, for Defendant McKeon.

Vincent A. Cirillo, Jr., Norristown, PA, for Defendant Ricci.

## DECISION

JOYNER, District Judge.

This declaratory judgment action was heard non-jury before the undersigned on August 7, 2001 and we therefore now make the following findings of fact and conclusions of law in accordance with Fed. R.Civ.P. 52:

### *Findings of Fact*

1. The Plaintiff is TICO Insurance Company, an Ohio corporation with its principal place of business in Dallas, Texas.

2. Defendant William March is an adult individual and citizen of the Commonwealth of Pennsylvania whose last known address is 1215 Wells Street, Conshohocken, PA, 19428.

3. Defendant Joseph McKeon is an adult individual and citizen of the Commonwealth of Pennsylvania whose last known address is 201 Maple Avenue, Conshohocken, PA, 19428.

4. Defendant Lisa Ricci is an adult individual and citizen of the Commonwealth of Pennsylvania whose last known address is 438 East Ninth Avenue, Conshohocken, PA, 19428.

5. William March was employed as a carpenter by Advanced Concrete & Construction, Inc. from early 1998 until the summer of 1999.

6. Plaintiff, TICO Insurance Company, issued Business Auto Policy No. LC0000048404 to Advanced Concrete & Construction, Inc. for that period between December 5, 1998 to December 5, 1999 covering several vehicles which Advanced owned, including a 1986 GMC Sierra pickup/utility body truck.

7. In December, 1998, Advanced Concrete & Construction, Inc. permitted William March to use its 1986 GMC pickup truck primarily for transportation to and from work. At the time he was given the 1986 truck to drive, Mr. March was warned by Advanced Concrete's Foreman, Samuel Conseal, "not to get sloppy drunk and drive it around." Mr. March interpreted Mr. Conseal's statement to mean that he was not to use the truck when he was intoxicated.

8. On the night of April 10, 1999, William March drove the 1986 GMC pickup truck to a bar known as "Whiskey Dick's" in the Manayunk section of Philadelphia. Mr. March left the bar to return home at approximately 12:30 a.m. on April 11, 1999 after having consumed some six pints of beer over a four-hour period.

9. At approximately 12:45 a.m. on April 11, 1999, the 1986 GMC pickup truck which Mr. March was driving collided with a motorcycle which was owned and operated by Joseph McKeon at the intersection of Main Street and Green Lane in Manayunk. Lisa Ricci was a passenger on the motorcycle at the time of the collision and both she and Mr. McKeon suffered severe personal injuries as a result of the accident.

10. Immediately after the collision, Mr. March fled the scene, believing that he had merely struck a curb. He was apprehended by the Philadelphia police a short distance away and was charged with the offenses of Driving Under the Influence, Leaving the Scene of an Accident and Felony Assault.

11. William March was found by the Division of Toxicology of MCP Hahnemann University Hospital to have had a whole blood concentration of ethyl alcohol in grams per deciliter of 0.142 or 0.142 grams % and 2.0 nanograms per milliter of the main psychoactive compound found in marijuana at or about the time of the accident.

12. William March subsequently pled guilty to the charges of Felony Assault, Leaving the Scene of an Accident and Driving Under the Influence which had been levied against him as a result of the April 11, 1999 accident.

13. At the time of the accident, William March was not working for or on behalf of Advanced Concrete & Construction, Inc. but was instead operating the 1986 GMC pickup truck for his own, personal use.

14. At the time of the accident, William March was operating the 1986 GMC pickup truck while he was intoxicated and

while his blood alcohol level was in excess of the legal limit.

15. Both Joseph McKeon and Lisa Ricci have filed civil actions against William March seeking damages for the bodily injuries which they suffered as a result of the accident on April 11, 1999.

16. When this declaratory judgment action was filed, the underlying litigation consisted of two lawsuits captioned, *Joseph McKeon v. Advanced Concrete & Construction, Inc. and William March*, and *Lisa Ricci v. Advanced Concrete & Construction, Inc. and William March*, both in the Court of Common Pleas of Philadelphia County, Nos. 9908–0459 and 0006–1504, respectively.

17. Since this action has been filed, two additional underlying actions were filed, *Joseph McKeon v. Whiskey Dick's Bar & Grill, DiPerzio's, Inc., Advanced Concrete & Construction and William March*, C.P. Phila. January Term 2001, No. 3661, and *Lisa Ricci v. Whiskey Dick's, et. al.*, C.P. Phila. April Term 2001, No. 0810.

18. TICO Insurance Company has provided a defense to William March in those underlying cases subject to a reservation of rights, reserving the right to discontinue that defense, or to disclaim coverage in connection with any resulting verdict or judgment.

19. TICO Insurance Company has also provided a defense through separate counsel to its policyholder, Advanced Concrete & Construction, Inc. Although TICO Insurance Company denies that liability insurance coverage is owed to William March in connection with the April 11, 1999 accident, it does not dispute the fact that its policyholder, Advanced Concrete & Construction, Inc. is entitled to liability coverage under Policy No. LC0000048404.

20. A default has been entered in this declaratory judgment action against William March, who has not contested TICO's denial of liability coverage by responding to the Plaintiff's Complaint.

### Discussion

 Under Pennsylvania law, in interpreting the language of an insurance policy, the goal is to ascertain the intent of the parties as manifested by the language of the written instrument. *Madison Construction Co. v. Harleysville Mutual Insurance Co.*, 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). When construing a policy, words of common usage are to be construed in their natural, plain and ordinary sense; where the language of a policy is clear and unambiguous, a court is required to give effect to that language. *Municipality of Mt. Lebanon v. Reliance Insurance Company*, 2001 PA Super 177, —— A.2d —— (2001). Where, however, a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. *Madison Construction*, 735 A.2d at 106, quoting *Gene & Harvey Builders v. Pennsylvania Manufacturers Association*, 512 Pa. 420, 426, 517 A.2d 910, 913 (1986) and *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 304–305, 469 A.2d 563, 566 (1983). *See Also: The Travelers Casualty & Surety Company v. Castegnaro*, 772 A.2d 456 (2001); *Bateman v. Motorists Mutual Insurance Co.*, 527 Pa. 241, 590 A.2d 281, 283 (1991). Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense or if it is subject to more than one reasonable interpretation when applied to a particular set of facts. *Madison Construction, supra.* A provision of an insurance contract then, is ambiguous if reasonably intelligent persons, considering it in the context of the whole policy, would

differ regarding its meaning. *Carey v. Employers Mutual Casualty Company,* 189 F.3d 414, 420 (3rd Cir.1999), citing *State Farm Mut. Auto. Ins. Co. v. Moore,* 375 Pa.Super. 470, 475–76, 544 A.2d 1017, 1019 (1988). The language of an insurance policy should not be tortured to create ambiguities, but should be read to avoid ambiguities, if possible. *Gene & Harvey Builders,* 517 A.2d at 917, citing *Monti v. Rockwood Insurance Co.,* 303 Pa.Super. 473, 450 A.2d 24 (1982). *See Also: Steuart v. McChesney,* 498 Pa. 45, 53, 444 A.2d 659, 663 (1982).

■■■■■ These principles notwithstanding, where the insurer or its agent creates in the insured a reasonable expectation of coverage that is not supported by the terms of the policy, that expectation will prevail over the language of the policy. *Bensalem Township v. International Surplus Lines Insurance Co.,* 38 F.3d 1303, 1311 (3rd Cir.1994). Indeed, Pennsylvania case law dictates that the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured. *Reliance Insurance Company v. Moessner,* 121 F.3d 895, 903 (3rd Cir. 1997), citing *Tonkovic v. State Farm Mutual Automobile Insurance Co.,* 513 Pa. 445, 521 A.2d 920 (1987) and *Collister v. Nationwide Life Insurance Co.,* 479 Pa. 579, 388 A.2d 1346 (1978). In most cases, the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations, although the courts must examine the totality of the insurance transaction involved to ascertain the insured's reasonable expectations. *Id.; Bensalem Township v. International Surplus Lines Insurance Co.,* 38 F.3d 1303, 1309 (3rd Cir.1994). As a result, even the most clearly written exclusion will not bind the insured where the insurer or its agent has created in the insured a reasonable expectation of coverage. *Reliance, supra; Bensalem,* 38 F.3d at 1311. It has therefore been said that the insured's reasonable expectations control, even if they are contrary to the explicit terms of the insurance policy. *Medical Protective Company v. Watkins,* 198 F.3d 100, 106 (3rd Cir.1999).

■■■■■ Under an omnibus clause of an automobile insurance policy which designates as insured any person using the insured vehicle with the permission of the owner, the permission necessary to elevate the user to the status of an additional insured may be express or implied. *Federal Kemper Insurance Company v. Neary,* 366 Pa.Super. 135, 140, 530 A.2d 929, 931 (1987), citing, *inter alia, Brower v. Employers' Liability Assurance Co., Ltd.,* 318 Pa. 440, 444, 177 A. 826, 828 (1935) and *Esmond v. Liscio,* 209 Pa.Super. 200, 206, 224 A.2d 793, 796 (1966). Implied permission may arise from the relationship of the parties or by virtue of a course of conduct in which the parties have mutually acquiesced. *Id. See Also: Adamski v. Allstate Insurance Company,* 545 Pa. 316, 322, 681 A.2d 171, 174 (1996). However, "permission" requires something more than mere sufferance or tolerance without taking steps to prevent the use of the automobile without the knowledge of the named insured. *State Farm Mutual Insurance Company v. Judge,* 405 Pa.Super. 376, 381, 592 A.2d 712, 714 (1991). The critical question will always be whether the named insured said or did something that warranted the belief that the ensuing use was with its consent. There thus must be a "connection made" with the named insured's own conduct; proof of "acts, circumstances, and facts such as the continued use of the car" will be insufficient "unless they attach themselves in some way to the acts" of the named insured. *Allstate Insurance Company v. Davis,* 977 F.Supp. 705, 709 (E.D.Pa.1997),

quoting *Belas v. Melanovich,* 247 Pa.Super. 313, 372 A.2d 478, 483 (1977) and *Beatty v. Hoff,* 382 Pa. 173, 114 A.2d 173, 174 (1955). In other words, Pennsylvania law requires that there be a "nexus between the (complained of) acts and the voluntary action on the part of him who must consent." *See: Allstate v. Davis, supra.* To be sure, an owner of a motor vehicle has the legal right to restrict the permissive use of that vehicle by third persons. *Searfoss v. Avis Rent–A–Car Systems, Inc.,* 349 Pa.Super. 482, 486, 503 A.2d 950, 952 (1986).

At issue in this case is the clause found under Section II(A)(1) of the Business Auto Policy which TICO issued to Advanced Concrete and Construction:

1. WHO IS AN INSURED

The following are "insureds":

a. You for an covered "auto."

b. Anyone else while using with your permission a covered "auto" you own, hire, or borrow except:

(1) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2) Your employee if the covered "auto" is owned by that employee or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

(4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered "auto."

(5) A partner or yours for a covered "auto" owned by him or her or a member of his or her household.

 We find that this language is clear and unambiguous and we are therefore required to give effect to it. Thus, in order for coverage to be afforded to Mr. March under this policy, he had to have been operating the GMC pickup truck at the time of the accident with the permission and within the scope of the permission of the truck's owner, Advanced Concrete. Again, under clearly established Pennsylvania law, when this type of permissive use clause is at issue and it is determined that the driver deviated from the scope of the permission, coverage will be extended to the driver if the deviation from the named insured's permission is slight and inconsequential but not if it is substantial. *Hall, Travelers Indemnity Company v. Wilkerson,* 926 F.2d 311, 315 (3rd Cir.1991), citing *Freshkorn v. Marietta,* 345 Pa. 416, 29 A.2d 15 (1942) and *General Accident Insurance Co. v. Margerum,* 375 Pa.Super. 361, 544 A.2d 512 (1988).

 Here, the evidence produced at trial reveals that when Advanced Concrete gave the 1986 GMC pickup truck to Mr. March, it was with but one restriction: he was not "to get sloppy drunk and drive it around." (N.T. 8/7/01, 43). Mr. March understood this admonition to mean that he was not to use the vehicle when he was intoxicated. (N.T. 51). While it appears that Advanced Concrete may have acquiesced in Mr. March's driving of the truck to and from the Casmar Bar to join his Advanced co-workers for drinks after work on Friday afternoons, there is no evidence that on those occasions, he was "sloppy drunk" or was driving the vehicle while intoxicated. In contrast, on the morning of the accident involving Mr. McKeon's motorcycle, Mr. March has admitted that he was driving the truck while

intoxicated and that he pled guilty to that very criminal charge, along with several others that arose out of the subject accident. (N.T. 51). This behavior is, we find, a substantial deviation from the scope of the permission given the defendant and accordingly, we conclude that at the time of this accident, Mr. March was not operating the Advanced Concrete vehicle within the scope of the permission given to him by the truck's owner. We thus further conclude that TICO is under no further obligation to provide Mr. March with a defense or to indemnify him in the pending lawsuits which have arisen from the April 11, 1999 accident.

We therefore now enter the following:

### Conclusions of Law

1. This Court has jurisdiction over the subject matter and the parties to this lawsuit pursuant to 28 U.S.C. § 1332.

2. At the time of the subject accident of April 11, 1999, Defendant William March was not operating the Advanced Concrete and Construction, Inc.'s 1986 GMC Sierra pickup truck with the owner's permission as is required for coverage under Policy No. LC0000048404.

3. Plaintiff TICO Insurance Company owes no duty to Defendant William March to provide him with a defense or to indemnify him for any damages assessed against him as a result of the lawsuits which are now pending against him in the Court of Common Pleas of Philadelphia County and which arose out of the accident which occurred on April 11, 1999.

An order follows.

### ORDER

AND NOW, this 14th day of August, 2001, following Trial in this Matter on August 7, 2001, it is hereby ORDERED and DECREED that Declaratory Judgment be entered in favor of the Plaintiff in that it is the finding of this Court that Plaintiff owes no duty to provide a defense to William March or to indemnify him for any damages which may be assessed against him in those civil lawsuits pending against him in the Court of Common Pleas of Philadelphia County arising out of the accident which occurred on April 11, 1999 at the intersection of Main Street and Green Lane in the Manayunk section of the City of Philadelphia captioned as *Joseph McKeon v. Advanced Concrete & Construction, Inc. and William March*, and *Lisa Ricci v. Advanced Concrete & Construction, Inc. and William March*, Nos. 9908–0459 and 0006–1504, respectively and *Joseph McKeon v. Whiskey Dick's Bar & Grill, DiPerzio's, Inc., Advanced Concrete & Construction and William March*, C.P. Phila. January Term 2001, No. 3661, and *Lisa Ricci v. Whiskey Dick's, et. al.*, C.P. Phila. April Term 2001, No. 0810.