# Housing & Redevelopment Insurance Exchange v. Lycoming County Housing Authority

C.P. of Lackawanna County, no. 99-CV-6060.

*Eugene F. Hickey II,* for plaintiff.
*John R. Bonner* and *Joseph F. Orso III,* for defendants LCHA, Pepperman and Montgomery.
*Janine C. Gismondi* and *Katherine M. Allen,* for defendant Cipriani.

NEALON, *J.,* December 31, 2001—Defendant Lycoming County Housing Authority, its community counsel, defendant Janice Pepperman; deputy executive director, defendant Elizabeth Montgomery; and former director of operations, defendant Nicholas Cipriani, have filed a case dispositive motion in this declaratory judgment action which has been instituted by plaintiff, Housing and Redevelopment Insurance Exchange, regarding insurance coverage for Cipriani's claims against LCHA, Pepperman and Montgomery in *Cipriani v. Housing Authority of Lycoming County,* no. 4:99-CV-980 (M.D. Pa.). Since the definition of a "wrongful act" in HARIE's policy does not preclude coverage for civil rights claims, constitutional torts or retaliatory firings, HARIE has a duty to defend and indemnify the LCHA, Pepperman and Montgomery against Cipriani's claim that his discharge

contravened the First Amendment, due process clause and Pennsylvania Whistleblower Law. However, inasmuch as the HARIE policy expressly excludes coverage for defamation and actions based upon amendments to the Employment Retirement Income Security Act of 1974 (ERISA), HARIE has no obligation to defend or indemnify the LCHA, Pepperman or Montgomery in connection with Cipriani's claims for defamation and violations of the Comprehensive Omnibus Budget Reconciliation Act of 1985.

## I. PROCEDURAL HISTORY

On June 14, 1999, Cipriani commenced a federal lawsuit against LCHA, Pepperman and Montgomery asserting claims under (1) 42 U.S.C. §§1983 and 1985 for alleged violation of his First Amendment rights and denial of his right to substantive and procedural due process, (2) the Pennsylvania Whistleblower Law, 43 P.S. §1421 et seq., (3) the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621 et seq., (4) the Pennsylvania Human Relations Act (PHRA), 43 P.S. §951 et seq., (5) the Pennsylvania Civil Service Act, 71 P.S. §741.1 et seq., and (6) the Comprehensive Omnibus Budget Reconciliation Act of 1985, P.L. 99-272, Title X. (See plaintiff HARIE's complaint, ¶¶64-93.) At that time, LCHA was insured by HARIE pursuant to a "directors and officers" insurance policy (effective 9/7/98-9/7/99). (*Id.,* ¶11.) Upon its receipt of Cipriani's federal complaint from the LCHA, HARIE forwarded a letter to the LCHA on July 15, 1999, denying coverage and declining to defend or indemnify the LCHA, Pepperman and Montgomery in connection with Cipriani's lawsuit. (*Id.,* exhibit C.)

HARIE did not provide its prospective insureds with a defense subject to a reservation of rights, compare *Britamco Underwriters Inc. v. Grzeskiewicz,* 433 Pa. Super. 55, 57, 639 A.2d 1208, 1209 (1994), *app. discontinued,* 538 Pa. 639, 647 A.2d 894 (1994), nor did it retain counsel to defend those parties in the federal action pending a judicial determination of its duty to defend or indemnify. Compare *HARIE v. Housing Authority of Chester Cty.,* 102 Lacka. Jur. 244, 246 (2001) (HARIE hired counsel to defend HACC in an employment discrimination suit and thereafter issued a denial of coverage letter based upon the "wrongful acts" definition of its policy). Instead, it chose to file the instant declaratory judgment action several months later on December 3, 1999, seeking a judicial declaration that it has no duty to defend or indemnify the LCHA, Pepperman or Montgomery in conjunction with Cipriani's claims. In its declaratory judgment complaint, HARIE contends that its policy only provides coverage for a "wrongful act" by the LCHA or its directors and officers and that its policy's definition of the term "wrongful act" does not include Cipriani's First Amendment, due process and Whistleblower Law claims. HARIE further maintains that coverage for defamation and COBRA violations is expressly excluded under the policy. (See HARIE's complaint, ¶¶12-15, 94-107.)

. LCHA, Pepperman and Montgomery filed a motion for summary judgment in the federal court action, and by order dated September 22, 2000, U.S. District Judge James F. McClure Jr., dismissed Cipriani's substantive due process claim and his count based upon the Pennsylvania Civil Service Act, but denied the summary judgment motion in all other respects. (See docket sheet for

no. 4:99-CV-980 (M.D. Pa.), entry no. 55.) On September 25, 2000, the LCHA, Pepperman and Montgomery filed a motion for judgment on the pleadings in the declaratory judgment action seeking a judicial determination that HARIE is bound to defend and indemnify them, and on October 30, 2000, the court administrator scheduled that motion for oral argument on March 15, 2001. In the interim, Judge McClure granted Cipriani's request to amend his complaint in the federal action, and on November 7, 2000, Cipriani filed an amended complaint which withdrew his age discrimination count, but continued to advance claims predicated upon the First Amendment (Count I), the due process clause (Count II), the Whistleblower Law (Count III), the Civil Service Act (Count IV), defamation (Count V), and COBRA (Count VI). (*Id.,* no. 65, ¶¶60-93.) Cipriani subsequently abandoned his Civil Service Act theory as per Judge McClure's earlier ruling on September 22, 2000.

Cipriani's First Amendment (Count I) and defamation (Count V) claims were litigated before a jury beginning on December 5, 2000, and on December 18, 2000, the jury returned a verdict in favor of Cipriani and against the LCHA, Pepperman and Montgomery with respect to the First Amendment claim and awarded $875,000 in damages. As to the defamation count, the jury exculpated Montgomery but found Pepperman liable and awarded $25,000 in damages. Cipriani's liability theories premised upon procedural due process (Count II), the Whistleblower Law (Count III) and COBRA (Count VI) were taken under advisement by the district court and the entry of judgment on the jury verdict was deferred pending a ruling on those non jury issues. (*Id.,* no. 101.)

On February 2, 2001, Judge McClure issued a memorandum and order finding in favor of Cipriani and against the LCHA, Pepperman and Montgomery with regard to Cipriani's procedural due process claim (Count II), but awarded no damages beyond the jury award. Judge McClure also ruled in favor of Cipriani and against the LCHA as to the COBRA claim (Count VI) but likewise awarded no damages. Last, Judge McClure found in favor of the LCHA, Pepperman and Montgomery relative to the Whistleblower Law theory. The entry of a final judgment on the jury and non jury verdicts was postponed until the federal court had disposed of Cipriani's petition for counsel fees and expenses pursuant to 42 U.S.C. §1988 and 29 U.S.C. §1132(g)(1). (*Id.,* no. 107.)

On February 12, 2001, the LCHA, Pepperman and Montgomery filed a motion for judgment n.o.v. under Fed.R.C.P. 50(b), or in the alternative, for a new trial pursuant to Fed.R.C.P. 59(a). (*Id.,* no. 109.) On February 16, 2001, Cipriani presented a motion for counsel fees and expenses together with a bill of taxable costs. (*Id.,* nos. 110-12.) Cipriani later filed a motion for entry of judgment on the federal jury and non jury awards. (*Id.,* no. 125.)

On March 15, 2001, oral argument was conducted on the defense motion for judgment on the pleadings in this declaratory judgment action, at the conclusion of which the parties were granted leave of court to file additional memoranda of law regarding an issue that was first raised by HARIE in its reply brief on the eve of oral argument. On April 16, 2001, HARIE filed a supplemental brief asserting yet another new issue and the LCHA, Pepperman and Montgomery requested an opportunity to submit responsive briefs addressing the same. By order dated

April 23, 2001, the parties were directed to file their supplemental briefs by May 7, 2001, at which time the record would be closed for a decision. However, the parties' submissions were incomplete with respect to whether endorsement no. XD0-1 excludes coverage for claims based upon conduct "as provided for in the Directors' Liability Act, 42 P.S. §8361 et seq., provided the named insureds avail themselves of the protection as provided in the Act by amending their bylaws."

Thus, by order dated June 5, 2001, the parties were directed to conduct and file limited discovery "relative to the defendants' alleged status as directors and/or members of the LCHA's board of directors vis-à-vis the applicability of endorsement no. XD0-1" and to thereafter request "additional oral argument with regard to endorsement no. XD0-1" or agree to submit the matter on briefs without the need for further argument. In addition, the motion for judgment on the pleadings was transformed into a motion for summary judgment since the declaratory judgment ruling would "not be confined to the pleadings and any documents attached thereto" and would include consideration of the parties' supplemental discovery materials. See *HARIE v. LCHA*, no. 99-CV-6060, Nealon, J., at pp. 4-5 (Lacka. Cty. June 5, 2001).

On June 22, 2001, Judge McClure entered judgment consistent with the jury verdict and district court rulings. (See federal docket sheet, *supra*, nos. 140-41.) Via memorandum and order dated June 26, 2001, Judge McClure partially granted Cipriani's motion for counsel fees and expenses and directed the LCHA, Pepperman and Montgomery to pay reasonable attorney's fees in the amount of $180,258 and expenses totaling $6,031.82 in accordance with 42 U.S.C. §1988 and 29 U.S.C. §1132(g)(1).

Cipriani also sought to recover $5,604.45 for fees and costs associated with his defense of HARIE's declaratory judgment action and argued that those expenses resulted in work product which was utilized in the federal litigation and that the declaratory judgment proceeding was "inextricably linked" to the issues raised in the federal case. However, Judge McClure concluded that Cipriani had not satisfied his burden of proof in that respect and, therefore, he denied the request for fees related to the declaratory judgment proceeding. See *Cipriani v. LCHA,* no. 4:CV-99-980, McClure, J., at pp. 25-27 (M.D. Pa. June 26, 2001).

On June 29, 2001, Cipriani filed a motion for reconsideration of Judge McClure's ruling in favor of the defense with respect to the Whistleblower Law claim, and on July 6, 2001, Cipriani submitted a supplemental motion for counsel fees and expenses. (See federal docket sheet, *supra,* no. 146-48, 150-52.) On December 7, 2001, a conference was conducted with counsel in the declaratory judgment case at which time the parties agreed to submit the instant motion for summary judgment without the need for additional oral argument. One week later, Judge McClure filed a memorandum and order denying Cipriani's motion for reconsideration relative to his Whistleblower Law claim and granting in part and denying in part the defense motion for judgment n.o.v. and/or a new trial. (*Id.,* no. 168.) Specifically, Judge McClure granted judgment n.o.v. as to two elements of Cipriani's First Amendment claim, but denied the motion with regard to the remaining aspect of his constitutional tort claim and thereby allowed the $875,000 award to stand. See *Cipriani v. LCHA,* no. 4:CV-99-980, McClure, J. at pp. 23-30, 42 (M.D. Pa. December 14, 2001). Judge

McClure rejected the motion for judgment n.o.v. in all other respects and conditionally denied the defense motion for a new trial on Cipriani's First Amendment claim. (*Id.* at pp. 10-23, 30-37.) Judge McClure contemporaneously issued a separate order awarding Cipriani $13,170 in supplemental counsel fees and $1,511.21 in additional expenses. (See federal docket sheet, *supra,* at no. 169.) With the benefit of this relevant procedural chronology, we will consider the merits of the parties' declaratory judgment arguments.

## II. FACTUAL BACKGROUND

To properly address the coverage issues which have been raised by the parties, the substance of Cipriani's allegations against the LCHA, Pepperman and Montgomery must be examined. Cipriani averred that he began his employment with the LCHA in 1979 and was ultimately promoted to director of operations in 1994. During the course of his employment, he reportedly discovered that: (1) LCHA "employees who were in a position to influence the award of [LCHA] contracts had solicited authority contractors to make contributions to organizations from which the employees derived personal benefit"; (2) a LCHA "managerial employee purchased three refrigerators owned by the [LCHA] at nominal cost for her personal use"; (3) the LCHA unwittingly hired Montgomery's brother-in-law, Dean Severson, since Montgomery had "failed to disclose their relationship prior to his hiring" in accordance with LCHA regulations; (4) the LCHA "entered into business dealings with an entity that was partially owned by a [LCHA] board member"; (5) "an upper management employee made

repeated inappropriate comments of a sexual nature to subordinate employees"; (6) the LCHA "reported certain financial information to the public, its board of commissioners and/or regulatory agencies" which may have been inaccurate; (7) the LCHA contravened the applicable law "with respect to evictions, rent collections and inspections" of residents; and (8) the LCHA's employment practices were not in compliance with the applicable law. According to Cipriani, his superiors became upset with him when he brought these matters to their attention. (See Cipriani's amended complaint, ¶¶4, 18-26.)

Cipriani further asserted that he received a directive from Pepperman that the Operations Department staff was to be reduced by two employees and that after weighing the criteria set forth in the LCHA's personnel policy, Cipriani recommended that two employees be laid off, one of whom was Montgomery's brother-in-law, Severson. However, "Montgomery and Pepperman reacted negatively to [Cipriani's] recommendation and selected two different individuals for layoff." (*Id.*, ¶¶31-35.) Additionally, during December 1998, Cipriani and employees of the Operations Department held voluntary meetings "prior to the start of work hours to discuss" their concerns regarding the impending restructuring of their department and other employment-related issues. "One of the employees who attended the meetings suggested that interested employees meet with an attorney to obtain advice regarding the legal validity of their concerns" and that particular "employees scheduled a meeting with an attorney to take place immediately after working hours on December 17, 1998." On the evening of December 16, 1998, Severson advised

his sister-in-law, Montgomery, "about the pre-work meetings, the attorney meeting scheduled for December 17, 1998, and the employees' intention, consistent with the personnel policy, to present work-related grievances and concerns to the [LCHA's] board of commissioners." (*Id.,* ¶¶37-42.)

In the early afternoon of December 17, 1998, Cipriani was summoned to Pepperman's office where Pepperman and Montgomery "questioned him about the pre-work meetings and the plan to consult with an attorney" and thereafter "suspended [Cipriani's] employment with pay." On that same afternoon, Pepperman and Montgomery met with the entire Operations Department to inform them of Cipriani's suspension and reportedly "stated that [Cipriani] had 'lied to us,' that 'there must be something wrong with him,' that he was attempting to organize a 'walkout' and a takeover of the Housing Authority. . . ." Furthermore, on January 12, 1999, Cipriani "received an undated letter advising him that his employment was terminated effective January 14, 1999." (*Id.,* ¶¶43-46.)

Following his termination, Cipriani's job duties as operations director were assumed by Dean Severson. Moreover, subsequent to his discharge, Cipriani was not advised by the LCHA "until March 11, 1999, of his right under COBRA to elect continued health insurance coverage under the [LCHA's] group plan." Although the LCHA advised Cipriani "on March 26, 1999, that, pending his election, his health insurance coverage had been reinstated," Cipriani's coverage was not reinstated and he "and his dependents suffered a loss of health insurance coverage." (*Id.,* ¶¶51, 54-59.)

Cipriani alleged that his termination violated his civil rights since it constituted retaliation against him for ex-

ercising his First Amendment rights and deprived him of a liberty interest without adequate procedural due process (*i.e.,* notice and an opportunity to challenge the charges being made against him prior to his discharge). Cipriani further asserted that the remarks by Pepperman and Montgomery defamed him and that his termination in retaliation for reporting malfeasance by the LCHA contravened the Whistleblower Law. Finally, Cipriani maintained that the LCHA's actions with respect to his post-employment health insurance coverage violated the dictates of COBRA. (*Id.,* ¶¶61-93.)

As stated above, the federal jury found that Cipriani's expressed intent to seek legal advice, objections concerning the employment of Dean Severson and complaints regarding Montgomery's solicitation of a contribution from an LCHA contractor for her son's hockey team were substantial or motivating factors in the decision to terminate Cipriani and thereby awarded $875,000 in damages. The jury further awarded $25,000 to Cipriani based upon its verdict that Pepperman had defamed him.[1]

---

1. The federal verdict slip in *Cipriani v. LCHA,* reads as follows:
Question 1:
Was any of the following a substantial or motivating factor in defendants' decision to terminate plaintiff Cipriani's employment?
(a) His expressed intent to seek legal advice about Housing Authority employment matters
(Check one)   Yes   X
                      No   __
(b) His complaints concerning the Housing Authority's employment of Dean Severson?
(Check one)   Yes   X
                      No   __
(c) His complaints concerning Ms. Montgomery's solicitation of a contribution from a Housing Authority contractor?
(Check one)   Yes   X
                      No   __

In his post-trial ruling, Judge McClure granted judgment as a matter of law in favor of the LCHA, Pepperman and Montgomery as to Cipriani's First Amendment claims regarding the hiring of Severson and Montgomery's solicitation of a LCHA contractor. In that regard, Judge McClure concluded that those "complaints

Instructions:

If you answered "yes" to *any* subpart of question 1, proceed to question 2. Otherwise, proceed to question 4.

Question 2:

Would the defendants have terminated plaintiff Cipriani's employment even in the absence of his activity protected under the First Amendment?

(Check one)    Yes  __

              No  X

Instructions:

If you answered "no" to question 2, proceed to question 3. Otherwise, proceed to question 4.

Question 3:

State the amount of damages, if any, sustained by plaintiff Cipriani as a result of defendants' violation of his constitutional rights.

$<u>875,000</u>

Instructions:

Proceed to question 4.

Question 4:

Did defendant Montgomery defame plaintiff Cipriani?

(Check one)    Yes  __

              No  X

Instructions:

Proceed to question 5.

Question 5:

Did defendant Pepperman defame plaintiff Cipriani?

(Check one)    Yes  X

              No  __

Instructions:

If you answered "yes" to *either* question 4 *or* question 5, proceed to question 6. Otherwise, the foreperson should sign and date the verdict slip, and the jury should return to the courtroom.

do not rise to the level of speech touching on matters of public concern" so as to constitute protected speech and "were erroneously submitted to the jury as part of [Cipriani's] First Amendment claim." See *Cipriani, supra* at pp. 26, 28. However, the district court further reasoned that Cipriani's "intent to seek legal counsel was protected under the First Amendment and [that] the court did not err in submitting the issue to the jury." *Id.* at p. 30. Judge McClure also declined to reverse his non jury verdicts in favor of Cipriani on the procedural due process and COBRA claims or his defense verdict on the Whistleblower Law count. *Id.* at pp. 12-23, 30-42.

In this declaratory judgment litigation, HARIE contends that Cipriani's constitutional and Whistleblower Law claims are not covered by the terms of the policy. The insuring clause of the HARIE policy affords coverage for the LCHA, its directors and officers "individually or collectively, for a wrongful act." (See plaintiff's response to defendants' supplemental brief, exhibit A, p. 1 of 8, ¶1(a), (b).) The term "wrongful act" is defined by the policy as "mean[ing] any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty by the directors and officers in the discharge of their duties, individually or collectively, or any matter claimed against them solely by reason of their being directors or officers of the authority." (*Id.* at p. 2, ¶3(c).) HARIE posits that the foregoing lan-

---

Question 6:

What amount of damages, if any, will fairly compensate plaintiff Cipriani for his emotional distress, humiliation and/or damage to his reputation caused by such defamation?

$ 25,000

(See defendants' reply brief, exhibit A.)

guage restricts its coverage to purely negligent acts and does not encompass constitutional torts or Whistleblower Law claims which may involve intentional conduct that is not insurable under the policy.[2] See *e.g., Crawford-El v. Britton,* 523 U.S. 574, 593 (1998) (noting that more than proof of an improper motive is needed to establish a constitutional violation in a First Amendment retaliation claim); *Daniels v. Williams,* 474 U.S. 327, 330-31, 334 (1986) (mere negligence or lack of due care by a government official is insufficient to implicate the due process clause of the Fourteenth Amendment). But, see *O'Rourke v. Commonwealth,* 566 Pa. 161, 175-78, 778 A.2d 1194, 1202-1204 (2001) (reasoning that the Whistleblower Law is not designed to punish an employer for harboring bad motives, but is chiefly a remedial measure intended to compel the government's compliance with the law by protecting those who inform authorities of wrongdoing).

HARIE further argues that Cipriani's cause of action for defamation is precluded by section 4(a)(1) of the policy which excludes coverage "for libel or slander," as well as by endorsement no. FD-1 which states that "[i]t is understood and agreed that the insurers shall not be liable to make payment for loss in connection with any claim arising out of circumstances involving . . . libel, slander, [or] defamation of character . . . ." (See HARIE, exhibit A, pp. 3, 12.) HARIE likewise submits that

2. In determining whether insurance coverage is excluded under an intentional act limitation set forth in a policy, an insured must not only have intended the conduct, but must also have specifically intended to cause the resultant harm. *United Services Auto Association v. Elitzky,* 358 Pa. Super. 362, 372, 517 A.2d 982, 989 (1986), *app. denied,* 515 Pa. 600, 528 A.2d 957 (1987); *Aetna Life & Casualty Co. v. Barthelemy,* 33 F.3d 189, 191 (3d Cir. 1994).

Cipriani's COBRA claim is not covered by the policy due to section 4(b)(5) which excludes claims "based upon the Employee Retirement Income Security Act of 1974, Public Law 93-406, commonly referred to as the Pension Reform Act of 1974, *and amendments thereto,* or similar provisions of any federal, state or local statutory law or common law." (*Id.* at p. 4.) (emphasis added) Last, HARIE advances an omnibus argument that all of Cipriani's claims are excluded from coverage by endorsement no. XDO-1 concerning certain conduct under the Directors' Liability Act, 42 P.S. §8361 et seq.

LCHA, Pepperman, Montgomery and Cipriani counter that HARIE's policy does apply to constitutional torts under section 1983 since those claims do not necessarily implicate intentional conduct. (See defendant Cipriani's reply brief, p. 3.) The insureds further note that the federal jury verdict was not predicated upon willful, malicious or intentional conduct inasmuch as Judge McClure had removed the issue of punitive damages from the jury's consideration. (See defendant LCHA's reply brief, p. 2.) Regardless of the type of conduct at issue, the insureds alternatively submit that the policy's definition of a "wrongful act" is broad enough to encompass civil rights claims under 42 U.S.C. §1983. See *Independent School District No. 697 v. St. Paul Fire & Marine Insurance Co.,* 515 N.W.2d 576 (Minn. 1994) (policy providing coverage for wrongful acts based on error or omission, negligence, breach of duty, misstatement or misleading statement afforded coverage for employee's claim of intentional discrimination); *New Madrid County Reorganized School District v. Continental Casualty Co.,* 904 F.2d 1236 (8th Cir. 1990) (applying Missouri law). Additionally, the insureds maintain that endorsement no.

XDO-1 is inapplicable since it applies only to directors and officers of the LCHA Board and Pepperman and Montgomery were never board members. (See defendant Cipriani's second supplemental reply brief, pp. 4-6.) We will consider the parties' arguments seriatim.

## III. DISCUSSION

### (A) *Standard of Review*

Under the Declaratory Judgments Act, 42 Pa.C.S. §7531 et seq., parties may obtain a declaration of their existing legal rights, duties, or status where the declaration will aid in the determination of a genuine, justiciable controversy. See *e.g., State Farm Fire & Casualty Co. v. Craley ex rel. Craley,* 784 A.2d 781, 785-86 (Pa. Super. 2001). The expressed purpose of the Declaratory Judgments Act "is to afford relief from uncertainty and insecurity with respect to legal rights, status and other relations." *Robson v. EMC Insurance Companies,* 785 A.2d 507, 509 (Pa. Super. 2001). For that reason, an action for declaratory judgment is particularly appropriate in construing contracts of insurance in order to determine whether an insurer is obligated to defend and/or indemnify one claiming coverage under the policy. *Liberty Mutual Insurance Co. v. S.G.S. Co.,* 456 Pa. 94, 95-99, 318 A.2d 906, 907-908 (1974); *Warner v. Continental/ CNA Insurance Companies,* 455 Pa. Super. 295, 301, 688 A.2d 177, 180 (1996), *app. denied,* 548 Pa. 660, 698 A.2d 68 (1997).

LCHA, Pepperman and Montgomery maintain that it should be declared as a matter of law that HARIE has a duty to defend and indemnify them under the terms of

the HARIE policy. It is well-settled that the proper construction of an insurance policy is an issue which may be resolved as a matter of law in a declaratory judgment action. *Redevelopment Authority of Cambria County v. International Insurance Co.,* 454 Pa. Super. 374, 383, 685 A.2d 581, 585-86 (1996), *app. denied,* 548 Pa. 649, 695 A.2d 787 (1997); *Boyertown Mutual Insurance Co. v. Skias,* 52 D.&C.4th 86, 91 (Berks Cty. 2001). Since the interpretation of an insurance policy presents a question of law for the court, the issue of whether a particular loss falls within the coverage of a policy may be decided in a declaratory judgment action by way of a motion for summary judgment. *Bowers v. Estate of Feathers,* 448 Pa. Super. 263, 268, 671 A.2d 695, 697 (1995), *app. denied,* 550 Pa. 696, 705 A.2d 1303 (1997); *Fireman's Fund Insurance Co. v. Empire Fire & Marine Insurance Co.,* 152 F. Supp.2d 687, 688 n.1 (E.D. Pa. 2001).

## (B) *Duties To Defend and Indemnify*

HARIE's putative duties to defend and/or indemnify the LCHA, Pepperman and Montgomery involve independent contractual obligations that are nonetheless correlated. "An insurer's duty to defend the insured is dependent upon the derivative question of coverage . . . [and] [i]t is well-established that . . . an insurer must defend in any suit in which there exists *actual or potential* coverage." *Acceptance Insurance Co. v. Seybert,* 757 A.2d 380, 382 (Pa. Super. 2000). (emphasis in original) "An insurer's duty to defend is determined by the allegations set forth in the underlying complaint." *Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 611, 735 A.2d 100, 109 (1999); *Municipality of Mount Lebanon v. Reliance Insurance Co.,* 778

A.2d 1228, 1235 (Pa. Super. 2001). In that vein, the court must compare the allegations in the complaint with the provisions of the insurance contract and determine whether, if the complaint allegations are proven, the insurer would have a duty to indemnify the insured. *Keystone Spray Equipment Inc. v. Regis Insurance Co.,* 767 A.2d 572, 574 (Pa. Super. 2001); *Seybert, supra.* If the underlying complaint "alleges facts which, if true, would actually or *potentially* bring the claims within the policy coverage," the insurer must defend its insured. *Board of Public Education of School District of Pittsburgh v. National Union Fire Insurance Co. of Pittsburgh,* 709 A.2d 910, 913 (Pa. Super. 1998) (en banc) (emphasis in original), *app. denied,* 556 Pa. 669, 727 A.2d 126 (1998).

"An insurer who refuses to defend its insured from the outset does so at its own peril." *Id.* (citing *Stidham v. Millvale Sportsmen's Club,* 421 Pa. Super. 548, 564, 618 A.2d 945, 953 (1992), *app. denied,* 536 Pa. 630, 637 A.2d 290 (1993)). Until it can be conclusively determined that a plaintiff's claims against an insured are outside the ambit of the policy's coverage, an insurer has an obligation to defend against all claims potentially within the scope of the policy. *Municipality of Mount Lebanon, supra; Stidham, supra* at 564, 618 A.2d at 953-54 (holding that "until the claim is narrowed to one patently outside the policy coverage, the insurer has a duty to defend."). Accord *Key Handling Systems Inc. v. W.C.A.B. (Jenkins),* 729 A.2d 109, 114-15 (Pa. Commw. 1999) ("[t]his duty to defend remains with the insurer until it is clear that the claim has been narrowed to one beyond the terms of the insurance policy.") If an insurer breaches its duty to defend, its insured is entitled to recover the costs incurred in defending the underlying lawsuit. See *Mace*

*v. Atlantic Refining Marketing Corp.,* 567 Pa. 71, 785 A.2d 491, 498-99 (2001).

An insurer's duty to indemnify is separate and distinct from its duty to defend, *Key Handling Systems Inc.,* 729 A.2d at 116, and the duty to defend is actually broader than the duty to indemnify an insured. *Board of Public Education of School District of Pittsburgh,* 709 A.2d at 913; *Aetna Casualty & Surety Co. v. Roe,* 437 Pa. Super. 414, 421, 650 A.2d 94, 98 (1994). The more limited duty to indemnify "arises only when the insured is determined to be liable for damages within the coverage of the policy." *Fireman's Fund Insurance Co.,* 152 F. Supp.2d at 688 n.6 (quoting *Diamond State Insurance Co. v. Ranger Insurance Co.,* 47 F. Supp.2d 579, 584 (E.D. Pa. 1999)). Nevertheless, the two duties are interrelated and "an insurer's duty to indemnify an insured follows its duty to defend that insured," *Keystone Spray Equipment Inc.,* 767 A.2d at 576, and "both flow from a determination that the underlying complaint triggers coverage." *USX Corp. v. Adriatic Insurance Co.,* 99 F. Supp.2d 593, 611 (W.D. Pa. 2000).

In making a determination regarding the duty to defend and the contingent duty to indemnify, the averments of the underlying complaint must be "liberally construed with all doubts as to whether the claims may fall within the policy coverage [being] resolved in favor of the insured." *Roman Mosaic & Tile Co. v. Aetna Casualty & Surety Co.,* 704 A.2d 665, 669 (Pa. Super. 1997); *USX Corp., supra.* Accord *Western World Insurance Co. v. Reliance Insurance Co.,* 892 F. Supp. 659, 662 (M.D. Pa. 1995) ("[a]ny doubts regarding the insurer's duty to defend must be resolved in favor of the insured."). Guided by this standard of review, we will analyze the language

of HARIE's policy in the context of Cipriani's federal claims.

## (C) *Ripeness of Duty To Indemnify*

As a threshold matter, we must determine whether HARIE's purported duty to indemnify the LCHA, Pepperman and Montgomery is ripe for disposition. In its supplemental brief, HARIE posits that until all appeals have been exhausted in Cipriani's federal lawsuit, any ruling on its "duty to indemnify would be premature as this issue is not ripe for a decision." (See HARIE's supplemental brief, p. 2.)

HARIE's justiciability argument may be summarily rejected. Pennsylvania decisional precedent recognizes that an insurer's obligation to defend and indemnify an insured may be decided in a declaratory judgment proceeding prior to the conclusion of the underlying action. See *Harleysville Mutual Insurance Co. v. Madison,* 415 Pa. Super. 361, 366, 609 A.2d 564, 566 (1992) ("[i]f it is found that Madison fits the definition of an insured under the policy . . . then Harleysville will be required to defend him and ultimately be responsible for indemnification in the event the related suit should result in the plaintiff's favor. Contrary to the trial court's ruling, Harleysville['s] rights and duties to its potential insured cannot await a determination of the negligence action."). As the Supreme Court of Pennsylvania has reasoned:

"The question before a court in a declaratory judgment action is not whether the insurer owes *indemnification* in a specific amount, which would be a premature inquiry absent a full resolution of the underlying action. Instead, the question is whether the insurer has a duty to

indemnify the insured *in the event of* liability in the underlying action. A court can answer such a question because it is within the scope of a court's power pursuant to the Declaratory Judgments Act." *General Accident Insurance Co. of America v. Allen,* 547 Pa. 693, 707, 692 A.2d 1089, 1095 (1997). (emphasis in original) Accord *Redevelopment Authority of Cambria Cty. v. International Insurance Co.,* 457 Pa. Super. 374, 384, 685 A.2d 581, 586 (1996), *app. denied,* 548 Pa. 649, 695 A.2d 787 (1997). Therefore, HARIE's duty to indemnify the LCHA, Pepperman and Montgomery against the federal judgment entered against them is ripe for a judicial declaration even though the parties' appeals to the United States Court of Appeals for the Third Circuit have not yet been concluded.

### (D) *"Wrongful Act" Coverage*

The goal of interpreting an insurance contract is to determine the intent of the parties as manifested by the language of the policy. *Lititz Mutual Insurance Co. v. Steely,* 567 Pa. 98, 785 A.2d 975 (2001); *Board of Public Education of School District of Pittsburgh,* 709 A.2d at 912. Where the wording of an insurance policy is clear and unambiguous, a court is required to give effect to that language. *Madison Construction Co., supra* at 606, 735 A.2d at 106; *Municipality of Mount Lebanon,* 777 A.2d at 1232. However, if a provision of a policy is ambiguous, it must be construed in favor of the insured and against the insurer as the drafter of the agreement.[3] *Madi-*

---

3. The parties' reasonable expectations are to be the touchstone of any inquiry into the meaning of an insurance policy. *Bensalem Township v. International Surplus Lines Insurance Co.,* 38 F.3d 1303, 1309 (3d Cir. 1994); *USX Corp.,* 99 F. Supp.2d at 610. Therefore, if an

*son Construction Co., supra; Fayette County Housing Authority v. Housing & Redevelop. Insurance Exchange (HARIE),* 771 A.2d 11, 13 (Pa. Super. 2001) (en banc); *Seybert,* 757 A.2d at 382.

Insurance policy language is not deemed to be ambiguous merely because the parties do not agree on its interpretation. *Tyler v. Motorists Mutual Insurance Co.,* 779 A.2d 528, 531 (Pa. Super. 2001); *RESPA of Pennsylvania Inc. v. Skillman,* 768 A.2d 335, 340 (Pa. Super. 2001). On the contrary, a policy provision is ambiguous only "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Madison Construction Co., supra* at 606, 735 A.2d at 106 (quoting *Hutchison v. Sunbeam Coal Co.,* 513 Pa. 192, 201, 519 A.2d 385, 390 (1986)). The presence or absence of an ambiguity is not a question to be resolved in a vacuum and must instead be considered in reference to a specific set of facts. *Lititz Mutual Insurance Co., supra.* Hence, insurance terms "are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Madison Construction Co., supra; HARIE, supra.*

insurer or its agent creates in the insured a reasonable expectation of coverage that is not supported by the terms of the policy, that expectation will prevail over the language of the policy. *Bensalem Township, supra* at 311; *Tico Insurance Co. v. March,* 155 F. Supp.2d 441, 446 (E.D. Pa. 2001). As a result, it has been said that even the most clear and unambiguous provision or exclusion in a policy will not bind an insured if the insurer or its agent has created a reasonable expectation in the insured that coverage will exist for a particular claim. See *The Medical Protective Co. v. Watkins,* 198 F.3d 100, 106-107 (3d Cir. 1999); *March, supra; USX Corp., supra.* The LCHA, Pepperman and Montgomery have not alleged that HARIE or its representatives engaged in conduct during the negotiation or execution of the insurance contract which created a reasonable expectation of coverage.

Ambiguities are generally characterized as either patent or latent. Patent ambiguities appear on the face of the insurance contract due to the use of defective, obscure or insensible language. *Sunbeam Corp. v. Liberty Mutual Insurance Co.,* 740 A.2d 1179, 1185 (Pa. Super. 1999). A latent ambiguity arises from extraneous or collateral facts that render the meaning of policy language uncertain even though in a general sense the wording appears clear and unambiguous as written. *USX Corp.,* 99 F. Supp.2d at 609.

In interpreting the terms of an insurance policy, a court should not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Madison Construction Co., supra; HARIE, supra.* To that end, words of common usage in an insurance policy are to be read in their natural, plain and ordinary sense and courts may consider the dictionary definitions of insurance terms in attempting to reasonably construe them. *Madison Construction Co., supra* at 608, 735 A.2d at 108; *Tyler, supra; Municipality of Mount Lebanon,* 778 A.2d at 1232-33.

HARIE contends that its policy's definition of a "wrongful act" bars coverage for Cipriani's claims under the First Amendment, due process clause and Whistleblower Law. However, the definitional provision of the policy does not state that civil rights claims, constitutional torts or retaliatory firings are expressly or implicitly excluded. In fact, unlike other liability insurance policies, the HARIE contract does not contain a specific exclusion for harm that was intended or expected by the insured.[4] Compare, *Elitzky, supra.*

---

4. HARIE does not allege that the LCHA representatives engaged in willful or fraudulent misconduct which was outside of the scope of

While it is true that the policy definition of "wrongful act" includes wording such as "neglect or breach of duty," that language cannot be viewed in isolation and must be analyzed in the entire context in which it appears. HARIE's definition of a "wrongful act" not only refers to an "error," "omission," "neglect" and "breach of duty," but also includes more egregious conduct such as a "misleading statement" and "misstatement" and broadly embodies "any matter claimed" against the LCHA's representatives by reason of their positions. Such terminology does not support the conclusion that the policy definition of the term "wrongful act" is confined to mere negligence. Cf. *Miller v. Keystone Insurance Co.,* 535 Pa. 531, 538-39, 636 A.2d 1109, 1113 (1994) (equating "misleading statements" with intentional conduct and holding that absent "evidence of fraud, intentional deception, or the making of misleading statements," an employer has no affirmative duty to apprise an employee about available workers' compensation benefits). On the contrary, the language employed by HARIE in defining a "wrongful act" reflects an expansive, rather than a restrictive, application of that term. See *Alexander v. CNA Insurance Co.,* 441 Pa. Super. 507, 512-13, 657 A.2d 1282, 1285 (1995) (liberally construing a comparable definition of "wrongful acts" and holding that board members charged with breach of contract were entitled

---

their employment such that it would be contrary to the pubic policy of the Political Subdivision Tort Claims Act for insurance coverage to be afforded. Compare *Supervisors of Lewis Township v. Employers Mutual Cas. Co.,* 514 Pa. 242, 249-50, 523 A.2d 719, 722 (1987) (holding that it would be violative of public policy to permit a township to insure against willful or fraudulent misconduct by its officials which occurred outside of the scope of their employment).

to coverage since wrongful acts were defined as being any neglect of duty by the insureds in discharge of their duties), *app. denied,* 543 Pa. 689, 670 A.2d 139 (1995).

At most, the definition of a "wrongful act" in the policy could arguably be regarded as ambiguous. In that event, it is appropriate to consider dictionary definitions of that phrase as an aid in interpretation. See *Madison Construction Co., supra.* Black's Law Dictionary has defined a "wrongful act" as "[a]ny act which in the ordinary course will infringe upon the rights of another to his damage, unless it is done in the exercise of an equal or superior right. [The term] is occasionally equated to [the] term 'negligent' but has . . . been considered a more comprehensive term, including criminal, willful, wanton, reckless and all other acts which in the ordinary course will infringe upon rights of another to his damage." *Land v. U.S.,* 29 Fed. Cl. 744, 753 (U.S. Fed. Cl. 1993) (quoting Black's Law Dictionary (5th ed.) p. 1446); *Hopkins v. First Union Bank of Savannah,* 193 Ga. App. 109, 113, 387 S.E.2d 144,147-48 (1989) (same). Cipriani has alleged, and later established to the satisfaction of a jury, that his termination infringed upon his rights and that he should recover damages for the defendants' wrongful conduct. Therefore, construing such an ambiguity in favor of the insured and applying recognized dictionary interpretations, HARIE's definition of a "wrongful act" includes coverage for constitutional torts, civil rights claims and Whistleblower Law violations.

We are mindful that HARIE, as the drafter of the insurance policy, had the ability to control its exposure and indemnity obligations by inserting language that expressly excluded liability for constitutional torts or by defining the phrase "wrongful act" more narrowly so as

to eliminate coverage for claims involving violations of the First Amendment, due process clause or Whistleblower Law. See *Skias,* 52 D.&C.4th at 94 ("[i]f [the insurer] truly wished to limit coverage to the named business of individual insureds it could have easily done so by drafting a restrictive definition of 'insured' or by otherwise changing language in the contract of insurance to explicitly limit coverage to a particular business."); *Millar v. Columbia Accident & Health Insurance Co.,* 12 D.&C.3d 484, 489-90 (Lanc. Cty. 1979) ("[i]f defendant wanted to limit the clause 'any one sickness' to the narrow limits it now contends, it could have and should have phrased it differently or included a definition of the term 'sickness' within the policy giving it the meaning that it desired."). For whatever reason, HARIE declined to do so and is now bound by the terms of the policy that it alone composed. See *Royal Indemnity Co. v. City of Philadelphia,* 1 Phila. 110, 116-17 (1977) ("Royal could have included language excluding reckless or wanton misconduct in its insurance agreement; but as it did not, it is bound to a strict construction of the terms of the instrument which it drafted."). In a declaratory judgment action, our charge is to declare the rights and obligations of the parties by interpreting the policy as written, not by rewriting an insurance contract to include terms that the parties neglected to insert. Cf. *Stewart v. Automobile Underwriters Co. Inc.,* 54 D.&C.2d 62, 70 (Alleg. Cty. 1971) ("this court is not about to narrow the coverage afforded in such a policy by reading into it an exclusion that the drafters could have quite easily provided for or which further limits a coverage already reduced to a minimum. The insurer had complete control over what is included and what is to be excluded from coverage; the

insured may purchase the policy only on a take it or leave it basis and he has no say whatsoever in the language; assuming he had the technical ability to do so."). Since the policy definition of a "wrongful act" cannot reasonably be interpreted as excluding constitutional torts and retaliatory discharge claims, HARIE is obligated to provide coverage for Cipriani's claims based upon the First Amendment, due process clause and Whistleblower Law.

### (E) *Defamation and COBRA Exclusions*

HARIE also maintains that the exclusionary language in its policy expressly eliminates coverage for Cipriani's defamation and COBRA claims. "Where an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense." *Madison, supra* at 605, 735 A.2d at 106; *White v. Keystone Insurance Co.,* 775 A.2d 812, 813 (Pa. Super. 2001); *HARIE,* 771 A.2d at 13.

The coverage provisions of HARIE's policy clearly bar protection for "libel or slander" and endorsement no. FD-1 removes any doubt that HARIE is not responsible to make payment for any claims involving "libel, slander, [or] defamation of character." It is equally clear that section 4(b)(5) precludes coverage for claims based upon ERISA and any "amendments thereto." It is beyond question that COBRA amended ERISA and is, therefore, considered an "amendment thereto." See *Hubicki v. Amtrak Nat. Passenger R. Co.,* 808 F. Supp. 192, 193 (E.D. N.Y. 1992). Consequently, the unequivocal language of HARIE's policy bars coverage for Cipriani's defamation and COBRA claims and HARIE has no obligation to defend or indemnify the LCHA, Pepperman or Montgomery in that regard.

### (F) *"Directors' Liability Act" Exclusion*

Although not raised in HARIE's declaratory judgment complaint or its initial submissions with the court, HARIE asserted in its supplemental brief that coverage for Cipriani's claims is precluded by endorsement no. XDO-1 of the policy. That particular endorsement states:

"It is hereby understood and agreed that the insurer shall not be liable to make payment for loss in connection with any claim based upon any action which is determined to be a breach of fiduciary relationship, failure to act, or unjustifiable reliance and which breach is determined to constitute self-dealing, willful misconduct, or recklessness as provided for in the director's Liability Act, 42 P.S. §8361 et seq., provided the named insureds avail themselves of the protection as provided in the Act by amending their bylaws. Failure to enact bylaws as provided for in the Act shall result in the exclusion of any claim payment for any breach, failure to act, or unjustifiable reliance." (See plaintiff's response to defendants' supplemental brief, exhibit A, p. 20.)

For endorsement no. XDO-1 to apply, the wrongful act must have been committed by a corporate director or officer and such conduct must have been adjudicated as constituting self-dealing, willful misconduct or recklessness as identified in the Director's Liability Act.[5] HARIE was granted the opportunity to conduct discovery to substantiate its bald assertion that Pepperman and Montgomery are directors or officers of the LCHA board who are

---

5. HARIE's policy cites to the Director's Liability Act as 42 P.S. §8361 et seq. The Act of December 19, 1990, P.L. 834, no. 198, §306, repealed that statute which was formerly found at 42 Pa.C.S. §§8361-8367, and enacted a revised version of that Act which has been recodified at 15 Pa.C.S. §§511-518 and 1711-1718.

subject to the Director's Liability Act, but failed to submit any materials demonstrating that Pepperman and Montgomery should be regarded as de facto or de jure directors or officers of the board. In contrast, LCHA has produced an affidavit, several job descriptions and by-laws establishing that the LCHA's community counsel and deputy executive director are not board directors or officers. (See affidavit of Elizabeth Montgomery dated 6/20/01 and exhibits A-D attached thereto.) Hence, the exclusionary language of endorsement no. XDO-1 does not apply to Pepperman or Montgomery.

Assuming arguendo that Pepperman and Montgomery were somehow deemed to be board directors or officers, endorsement no. XDO-1 would nevertheless be inapplicable. The Director's Liability Act governs breaches of loyalty or fiduciary duty by corporate directors or officers which unjustly enrich them at the expense of the corporation they serve. See *e.g., Westlake Plastic Co. v. O'Donnell,* 182 F.R.D. 165 (E.D. Pa. 1998) (corporate vice-president engaged in undisclosed self-dealing against corporation's best interest and for his own financial benefit); *Resolution Trust Corp. v. Lutz,* 914 F. Supp. 1163 (E.D. Pa. 1996) (test of liability for breach of fiduciary duty is whether corporate director or officer was unjustly enriched). Neither Pepperman nor Montgomery has been charged with such conduct by Cipriani and there has been no judicial determination that either has committed self-dealing, willful misconduct or recklessness as proscribed by the Director's Liability Act. As a consequence, HARIE has not satisfied its burden of proving its affirmative defense that endorsement no. XDO-1 excludes coverage.

## CONCLUSION

Based upon the foregoing, HARIE is obligated to provide coverage for Cipriani's claims based upon the First Amendment, due process clause and Whistleblower Law and has a duty to defend the LCHA, Pepperman and Montgomery in that regard. Cipriani's claims for defamation and COBRA infractions are specifically excluded under the policy and HARIE owes no duty to defend or indemnify the LCHA, Pepperman and Montgomery against those claims. HARIE does have a duty to indemnify the LCHA, Pepperman and Montgomery for Cipriani's causes of action predicated upon the First Amendment, due process clause and Whistleblower Law. As a practical matter, and barring any reversal by the Third Circuit Court of Appeals, indemnification will only be required with respect to the First Amendment award of $875,000 since Judge McClure awarded no damages on the procedural due process verdict and found in favor of the LCHA, Pepperman and Montgomery on the Whistleblower Law claim. An appropriate order will follow.

## ORDER

And now, December 31, 2001, upon consideration of the motion for summary judgment of defendants, Lycoming County Housing Authority, Janice Pepperman, Elizabeth Montgomery, and Nicholas Cipriani, and based upon the reasoning set forth in the foregoing memorandum, it is hereby ordered and decreed that:

(1) Defendants' motion for summary judgment is granted in part and denied in part;

(2) Defendants' motion for summary judgment is denied with respect to defendant Nicholas Cipriani's allegations of defamation and violations of the Comprehensive Omnibus Budget Reconciliation Act of 1985 by defendants, Lycoming County Housing Authority, Janice Pepperman and Elizabeth Montgomery;

(3) Plaintiff, Housing and Redevelopment Insurance Exchange does not owe defendants, Lycoming County Housing Authority, Janice Pepperman and Elizabeth Montgomery, a duty to defend or a duty to indemnify them against the defamation and COBRA claims asserted by defendant, Nicholas Cipriani, in *Cipriani v. Housing Authority of Lycoming County,* no. 4:99-CV-980 (M.D. Pa.);

(4) Defendants' motion for summary judgment is granted with regard to plaintiff's obligation to provide insurance coverage to defendants, Lycoming County Housing Authority, Janice Pepperman and Elizabeth Montgomery, for defendant Nicholas Cipriani's claims based upon the First Amendment, due process clause and Pennsylvania Whistleblower Law;

(5) Plaintiff, Housing and Redevelopment Insurance Exchange owes defendants, Lycoming County Housing Authority, Janice Pepperman and Elizabeth Montgomery, duties to defend and indemnify them against defendant Nicholas Cipriani's claims in *Cipriani v. Housing Authority of Lycoming County,* no. 4:99-CV-980 (M.D. Pa.), which are based upon the First Amendment, due process clause and Pennsylvania Whistleblower Law; and

(6) The clerk of judicial records is directed to enter judgment in this matter pursuant to 42 Pa.C.S. §§7532, 7538 and Pa.R.C.P. 1035.2 consistent with this memorandum and order.