Valinda TYLER, Appellant,

v.

MOTORISTS MUTUAL INSURANCE COMPANY, Appellee.

Superior Court of Pennsylvania.

Argued April 5, 2001.
Filed June 15, 2001.

William M. Radcliffe, Uniontown, for appellant.

William J. Rogers, Pittsburgh, for appellee.

Before: DEL SOLE, President Judge, EAKIN and BROSKY, JJ.

BROSKY, J.:

¶ 1 Valinda Tyler appeals from the order of the trial court which sustained Appellee's demurrer to her complaint and dismissed the action. The sole issue presented involves an interpretation of the word "month" within the context of Appellant's automobile insurance policy. After careful review, we affirm.

¶ 2 The undisputed facts reveal that Appellant was involved in an automobile accident on March 24, 1997 and was injured. At the time of the accident, she was employed by the Commonwealth in the Department of Public Welfare and was earning an approximate gross daily wage of $125. Appellant had an automobile insurance policy [1] issued by Appellee which provided for, *inter alia,* a work loss benefit of $1,000 per month up to a maximum of $5,000 for income lost due to a motor vehicle accident.[2]

---

1. There can be no question that the policy was issued pursuant to the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701 *et seq. See* Amended Complaint ¶ 4.

2. The relevant policy provision is as follows.
   Work Loss Benefit consisting of:
   a. loss of income. Up to 80% of gross income actually lost by an **insured** as a result of the accident[.]

   However, Work Loss Benefit does not include:
   – – –
   c. any loss of income...during the first 5 working days the **insured** did not work after the accident because of bodily injury.
   *See* Original Complaint, Exhibit A.

¶ 3 Appellant was disabled from her employment as a result of the injuries she sustained in the automobile accident, and she consequently made a claim for work loss benefits pursuant to the policy.[3] Appellee paid Appellant $4,000 for the period of her disability beginning April 16, 1997 and ending August 14, 1997, or $1,000 for each of four monthly periods.

¶ 4 Appellant filed the instant action seeking to recover an additional $1,000 in work loss benefit, and also claimed that Appellee violated the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201–1 et seq.[4] Appellee filed preliminary objections in the nature of a demurrer which the trial court sustained, dismissing her complaint. This timely appeal followed.

¶ 5 Our standard of review is clear.

When reviewing an order granting preliminary objections in the nature of a demurrer, an appellate court applies the same standard employed by the trial court: all material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for the purposes of review. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the demurrer.

*Constantino v. University of Pittsburgh,* 766 A.2d 1265, 1268 (Pa.Super.2001) (citation omitted).

■ ¶ 6 The novel issue presented is a narrow one, requiring interpretation of a single term in the insurance policy. Appellant contends that she is entitled to work loss benefits for a five-month period because she was unable to work for all or part of five different months: April, May, June, July, and August 1997. Thus, she asks this Court to interpret the term "month" to mean any one of the twelve months in a calendar year. Alternatively, Appellant argues that the term is ambiguous and should be construed against the insurance company. Appellee, on the other hand, asserts that the term "month" unambiguously means a period of time from a given date in one month to the corresponding date in the next month. Consequently, Appellee submits that Appellant is entitled to work loss benefits for only four monthly periods, i.e., between April 16, 1997 and August 14, 1997.

■ ¶ 7 The trial court accepted Appellee's interpretation of the term "month" and accordingly concluded that Appellant failed to state a valid cause of action for additional benefits. In doing so, the trial court recognized that neither the MVFRL nor the subject insurance policy provides a definition for the term "month." We agree. Thus, we begin with the longstanding principles of contract interpretation.

The task of interpreting an insurance contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unam-

---

3. The calculation based on Appellant's gross income clearly entitled her to the $1,000 monthly benefit.

4. Appellant also sought class action certification on behalf of similarly-situated individuals.

biguous, a court is required to give effect to that language.

*Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 735 A.2d 100, 106 (1999)(quoting *Gene & Harvey Builders v. Pennsylvania Mfrs. Ass'n,* 512 Pa. 420, 517 A.2d 910, 910 (1986)) (citations omitted). When interpreting the language of an insurance policy, the words must be construed in their "natural, plain and ordinary sense." *Riccio v. American Republic Insurance Co.,* 550 Pa. 254, 705 A.2d 422, 426 (1997). "Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Madison,* 735 A.2d at 106 (citation omitted). We are mindful, however, that a court must not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity." *Id.* at 106. Instead, we must determine whether an ambiguity exists based upon the particular set of facts presented. *Id.* And, simply because the parties do not agree on the proper construction to be given a particular policy provision does not render the contract ambiguous. *Tenos v. State Farm Insurance Co.,* 716 A.2d 626 (Pa.Super.1998). Courts should read policy provisions to avoid an ambiguity if possible. *Id.*

■ ¶ 8 With these principles in mind, we turn to the issue before us. Because the particular term in question, "month," is not defined by the policy but is a word of common usage, we may refer to dictionary definitions to aid our understanding. *Madison, supra.* Webster's Ninth New Collegiate Dictionary (1990) defines "month" as

(1) a measure of time corresponding nearly to the period of the moon's revolution and amounting to approximately 4 weeks or 30 days or ½ of a year; (2) an indefinite usu. extended period of time[.]

The American Heritage ® Dictionary of the English Language: Fourth Edition (2000) provides the following definition for the word "month."

A unit of time corresponding approximately to one cycle of the moon's phases, or about 30 days or 4 weeks. 2. *Abbr.* mo. One of the 12 divisions of a year as determined by a calendar, especially the Gregorian calendar. Also called **calendar month.** A period extending from a date in one calendar month to the corresponding date in the following month. A sidereal month. A lunar month. A solar month.

Finally, we refer to Black's Law Dictionary (Seventh Ed.1999), which provides the following definition for "month."

1. One of the twelve periods of time in which the calendar is divided <the month of March>.—Also termed *calendar month; civil month.* 2. Any time period approximating 30 days <due one month from today>. 3. At common law, a period of 28 days; the period of one revolution of the moon <a lunar month>.—Also termed *lunar* month.

■ ¶ 9 Each of these dictionaries gives a definition providing that the term "month" means a period of time approximating 30 days, generally beginning with a date in one calendar month and ending with the corresponding date in the next calendar month. This is the definition advanced by Appellee. Two of those dictionaries also define "month" alternatively as one of the twelve divisions of the calendar year, which is the definition submitted by Appellant. Merely because a word has more than one dictionary definition does not, however, render the term ambiguous. Because we must apply the natural, plain, and ordinary meaning of the term "month" to the particular facts to determine wheth-

er an ambiguity exists, we shall look at the differing definitions of the word within the context of the policy.

¶ 10 The specific language in the policy provides for a benefit of $1,000 "per month" to a maximum of $5,000. Using the plain, ordinary meaning of the word "month" as found in the different dictionary definitions, it is evident that it is the one advanced by Appellee and adopted by the trial court which gives logical sense to the particular provision. Insurance policies are generally written to cover certain events which occur (or do not occur) over a specific period of time. It is wholly reasonable that any benefit derived therefrom should be payable in accordance with and for the duration of the covered time period, irrespective of the particular day of the month on which the loss accrues, provided that the policy is in effect at the time. Thus, an insured with a loss which spans a four-month period of time may logically expect to receive benefits which cover and correspond to that four-month time period.[5] In other words, the allowable benefit bears a direct relation to the actual loss. To accept Appellee's definition, the work loss benefit to which one is entitled would depend entirely on happenstance based on a random date on the calendar, rather than on the specific period of time over which one met the benefit criteria pursuant to the insurance contract. Such a result would be patently unreasonable and illogical.

¶ 11 Moreover, Appellant has cited no instance where a time period such as this has been construed in the manner she herein asserts. On the contrary, the definition of the word "month" which makes sense in this policy is that which describes a period of time approximating 30 days, generally beginning with a date in one calendar month and ending with the corresponding date in the next calendar month. We are thus satisfied that upon these facts, the word "month" as used within the insurance policy is not reasonably susceptible of different constructions and capable of being understood in more than one sense. *Madison, supra.* As we may not resort to a strained contrivance in order to find an ambiguity, we conclude none exists.

¶ 12 We also find persuasive several decisions of other jurisdictions which have had occasion to address similar arguments. In *Hammer v. Investors Life Insurance Co.*, 511 N.W.2d 6, 9 (Minn.1994), the court was asked to interpret the provision "during the last 12 months" in an insurance policy, and stated that "[t]ime periods designated in terms of months are generally understood to run from the given day in one month to the corresponding date in the specified preceeding [sic] or succeeding month." Similarly, in *Allstate Auto Leasing Co. v. Caldwell*, 394 A.2d 748 (Del.Super.1978), the court was asked to decide whether insurance coverage was provided on a vehicle leased for a term of one year where policy limited coverage to vehicles rented for "less than twelve (12) consecutive months". In concluding that it was not, the court reasoned that "in applying a time test, the period begins with the particular date of one time designation and continues to the same date of the next time designation...thus in computing time, a month would run from a date in one month to the corresponding date of the next month." *Id.* at 752–53 (citing West's Words & Phrases, vols. 6 and 27A). *See also Kennedy v. Pilot Life Insurance Co.*, 4 N.C.App. 77, 165 S.E.2d 676 (1969)(unless a contrary intent is expressed, the

---

5. We thus specifically reject Appellant's assertion that an insured has a "reasonable expectation" of receiving benefits for a five month period simply because a period of disability spans five different months of the calendar year.

term "month" signifies a calendar month without regard to the number of days it contains).

¶ 13 In further support for our conclusion, we also note that the particular coverage in dispute is one of the types of benefits which the MVFRL requires an insurer to make available. *See* 75 Pa.C.S. § 1715(a)(2)(providing for income loss benefits).[6] And, although that section of the MVFRL refers to the term "month" throughout its provisions, the specific term is not defined by either the Vehicle Code or the Act itself. We find guidance, however, in the Statutory Construction Act, which does define the word "month" as a "calendar month." 1 Pa.C.S. § 1921. We also find persuasive the related provision regarding computation of time periods within statutes.

§ 1910. Time; computation of months

Whenever in any statute the lapse of a number of months after or before a certain day is required, such number of months shall be computed by counting the months from such day, excluding the calendar month in which such day occurs, and shall include the day of the month in the last month so counted having the same numerical order as the day of the month from which the computation is made, unless there be not so many days in the last month so counted, in which case the period computed shall expire with the last day of such month.

1 Pa.C.S. § 1910.

¶ 14 In light of the foregoing, it is apparent that computation of a "month" has been consistently construed in the law as a period of time generally beginning with a date in one calendar month and ending with the corresponding date in the next calendar month. We conclude that the plain and ordinary meaning of the term "month" within the context of the instant insurance policy must be analyzed no differently. As such, we conclude that the trial court properly determined that Appellant failed to set forth a valid cause of action for benefits beyond the four-month period for which she received work loss benefits. As the law clearly does not permit recovery, the demurrer was properly sustained and dismissal of the action was warranted.

¶ 15 Order affirmed.

---

6. To the extent that Appellant contends the MVFRL is inapplicable to our resolution, we find that her claim for "loss of income" as a "work loss benefit" under her automobile insurance policy falls squarely within Section 1715 of the MVFRL, which requires availability of a "loss of income" benefit.