# Eastern Dentist Insurance Company v. Jones

C.P. of Philadelphia County, April Term 2004, no. 2398.

*Andrew J. Gallogly,* for plaintiff.
*Anthony E. Zabicki, Jr.* and *Mary M. Labree,* for defendant Simmons.
*Louis E. Slawe,* for defendant Jones.

JONES II, *J.,* June 29, 2005—This case is one of first impression for this court. In this action, plaintiff Eastern Dentist Insurance Company (EDIC), a dental society risk retention group, maintains that it need not defend and indemnify defendant Lionel A. Jones D.M.D. in an underlying medical malpractice action due to his alleged alterations of the patient's medical records. For the reasons discussed below, EDIC's motion for summary judgment is denied.

## BACKGROUND

EDIC issued and delivered a policy of professional dental liability insurance to the defendant Lionel Jones D.M.D. providing coverage on a claims-made basis for a policy period March 1, 2002 to March 2003. During this policy period, Dr. Jones treated Robert Simmons on

June 8, 2002, and extracted tooth no. 31 and prescribed Tetracycline and Tylenol. In July 2002, Jones responded to a request for records from an attorney and produced a copy of Simmons' chart.

In or about October 2002, Dr. Jones received notice of a dental malpractice claim on the part of Robert Simmons. Dr. Jones thereafter reported the claim to EDIC on or about November 7, 2002, after which EDIC opened a claim file, established communications with Simmons' attorney and began to investigate the claim. EDIC also received a copy of Simmons' chart.

After EDIC and Simmons' attorney were in possession of the chart, Dr. Jones added several notes to the chart. The notations were done with a different color pen and consisted of the following: (1) noting on the third line of the chart to the effect that the procedure performed by Dr. Jones on June 8, 2002, was a "simple extraction"; (2) the addition of the word "minor" to describe the patient's facial swelling at the time of his second office visit on June 10, 2002; (3) adding a statement at line 13 of the chart indicating that the patient said on his second visit that he had lost the medication which Dr. Jones had previously prescribed; (4) adding a statement at line 13 of the chart in connection with the second and last office visit to the effect that the patient had requested and was given his x-ray films; and (5) forging the patient's signature at lines 17 and 18 of the chart to suggest that Mr. Simmons actually signed for receipt of the x-ray films.

After learning of the existence of two different versions of the patient's chart, EDIC issued a reservation of rights letter to Dr. Jones and directed him to appear for an examination under oath to determine the circumstance surrounding the alterations. During the course of his

sworn testimony on December 4, 2003, Dr. Jones admitted that he made numerous changes to Simmons' chart during a single sitting that were not dated contemporaneously with their making. Dr. Jones testified that it was his desire to make the chart more complete by adding notations for clarification.

## DISCUSSION

"A court's first step in a declaratory judgment action concerning insurance coverage is to determine the scope of . . . coverage." *General Accident Insurance Co. of America v. Allen,* 547 Pa. 693, 706, 692 A.2d 1089, 1095 (1997). Under Pennsylvania law, the primary consideration in interpreting a contract, including an insurance contract, is the language of the contract itself. *Bateman v. Motorists Mutual Insurance Co.,* 527 Pa. 241, 245, 590 A.2d 281, 283 (1991). That language must be construed in accordance with its plain and ordinary meaning, *O'Brien Energy Systems Inc. v. American Employers' Insurance Co.,* 427 Pa. Super. 456, 461, 629 A.2d 957, 960 (1993), *appeal denied,* 537 Pa. 633, 642 A.2d 487 (1994), and the task of construing an insurance policy is generally performed by a court, rather than a jury. *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 304, 469 A.2d 563, 566 (1983). An insurer has a duty to indemnify its insured when it is established that the damages of the insured are within the policy coverage. *Caplan v. Fellheimer Eichen Braverman & Kaskey,* 68 F.3d 828, 831 n.1 (3d Cir. 1995). In addition, exclusions in insurance policies are strictly construed against the insurer. *First Pennsylvania Bank N.A. v. National Union Fire Insurance Co.,* 397 Pa. Super. 612, 618, 580 A.2d 799, 802 (1990).

"Contractual language is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Tyler v. Motorists Mutual Insurance Co.,* 779 A.2d 528, 531 (Pa. Super. 2001) (quoting *Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 605, 735 A.2d 100, 106 (1999)). The court must not distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. *Id.* Instead, the court must determine if an ambiguity exists based upon the particular set of facts presented. *Id.* Simply because the parties do not agree on the proper construction to be given a particular policy provision does not render the contract ambiguous. *Id.*

With these principles in mind, the court turns to the issue before it. In this case, the particular policy provision at issue provides as follows:

"The insured shall not alter any medical records or commit any other act that would interfere with the company's ability to defend a claim or suit against the insured. Alteration of medical records will make the policy void." Policy, section V, conditions (5)(f).

EDIC maintains that, since Dr. Jones altered Simmons' chart, the EDIC policy issued to Jones is void. Defendants, on the other hand, argue that the term "alter" is ambiguous, that a factual dispute exists over the writings that form the basis of the action and that EDIC has not suffered any prejudice as a result of the alterations.

Taking into consideration the briefs filed by the respective parties, oral argument as well as the EDIC policy provision, the court does not find the term "alter" to be ambiguous. Although the term "alter" is not defined by the policy, the court may refer to dictionary definitions

to aid understanding of words of common usage that are not defined by the policy. *Tyler v. Motorists Mutual Insurance Co.,* 779 A.2d 528, 531 (Pa. Super. 2001). Alter is defined as make different, modify. See the American Heritage Dictionary, 3rd Edition. Alter is also defined as make change; to modify, to vary to some degree. See Black's Law Dictionary, 5th Edition. Merely because a word has more than one dictionary definition does not render the term ambiguous. *Id.* at 531. Reading the term in conjunction with the provision as a whole it is reasonable to conclude that "alter" refers to some form of change. Notwithstanding how the defendants wish to characterize the changes made by Dr. Jones, the changes do constitute alterations under the terms of the policy.

This, however, does not end the inquiry. The provision at issue factors in a requirement of prejudice when it provides that "the insured shall not alter any medical records . . . that *would interfere* with the company's ability to defend a claim or suit against the insured." Consequently, before this court can void the policy due to Dr. Jones' alteration of Simmons' chart, the court must first determine whether the alterations by Dr. Jones interfered with/prejudiced EDIC's ability to defend the underlying medical malpractice action.[1]

---

1. The Medical Care Availability and Reduction of Error Act (the MCARE Act), 40 P.S. §1303.511 permits a health-care provider to add or correct information as long as they are clearly identified as subsequent entries by date and time. Moreover, section (c) Alteration Of Records of the MCARE Act states that "in any medical professional liability action in which the claimant proves by a preponderance of the evidence that there has been an intentional alteration or destruction of medical records, the court in its discretion may instruct the jury to consider whether such intentional alteration or destruction constitutes an adverse inference." See 40 P.S. §1303.511(c). Thus, the

As it pertains to this issue, the court is unable to reach a conclusion as to whether Dr. Jones' alteration interfered with/prejudiced EDIC's ability to defend the underlying action. According to defendants, the prejudice consists of increasing the likelihood of a verdict against the insured without regard to the actual facts or liability, creating the greater likelihood of a verdict against the insured without regard to the actual facts or liability, creating a greater likelihood of a punitive award, rendering the doctor guilty of unprofessional conduct and destroying his credibility as a witness.

On the other hand, defendants argue that Dr. Jones' alterations have not interfered with or prejudiced EDIC's ability to defend the underlying action. Defendants maintain that EDIC received the unaltered medical records, the altered records do not change the expert's assessment of Dr. Jones' alleged negligent treatment of Simmons, that Dr. Jones testified that the alterations were merely done to clarify the chart and that it was common for Dr. Jones to make editorial comments, such as the ones made on the chart, on all paperwork submitted to EDIC.

Based on the foregoing, the court cannot, at this stage in the proceedings, conclusively find that the altered medical records interfered with/prejudiced EDIC in the defense of the underlying action. Genuine issues of fact exist as to whether Dr. Jones' alterations interfered with the underlying action which prejudiced EDIC. All doubts as to the existence of a genuine issue of a material fact are to be resolved against the granting of summary judg-

court finds it reasonable, in light of the policy, as well as the MCARE Act, to read a requirement of prejudice in the policy provision at issue.

ment. *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466 (1979). The only way in which this court can conclusively establish that the alterations caused interference is to await the outcome of the underlying litigation. Accordingly, this action is stayed pending the resolution of the underlying action.[2]

## CONCLUSION

For the foregoing reasons, EDIC's motion for summary judgment is denied without prejudice and this action is stayed pending the resolution of the underlying action. An order consistent with this opinion will follow.

## ORDER

And now, June 29, 2005, upon consideration of plaintiff Eastern Dentist Insurance Company's motion for summary judgment, all responses in opposition, memoranda, all matters of record, after oral argument and in accord with the contemporaneous memorandum opinion to be filed of record, it hereby is ordered and decreed that plaintiff's motion for summary judgment is denied without prejudice.

It is further ordered that said action is stayed pending resolution of the underlying action.

---

2. EDIC, in support of its motion for summary judgment, relies upon *Eastern Dentist Insurance Company v. Lindsay DDS,* 2004 Mass. Super. Lexis 345 (2004). Although the policy provision at issue in *Lindsay* is identical, the facts are distinguishable. Unlike the claimant in *Lindsay,* here, Simmons received a copy of the unaltered medical records thus presenting a question of fact as to whether Dr. Jones was attempting to avoid legal liability for the alleged malpractice.