J-A20041-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RONITA ROGERS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE CO., JOHNNIE DORSEY, JR., JOHNNIE DORSEY, III AND CLASSIC COLLISIONWORKS | |
| Appellee | No. 161 EDA 2015 |

Appeal from the Order Entered on January 12, 2009
In the Court of Common Pleas of Philadelphia County
Civil Division at No.: 4114 July Term, 2008

BEFORE:  DONOHUE, J., SHOGAN, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED December 22, 2015**

Ronita Rogers challenges the trial court's January 12, 2009 order sustaining the preliminary objections of Allstate Property and Casualty Insurance Co. ("Allstate") and dismissing Rogers' claims against Allstate with prejudice.[1]  Rogers sought coverage from Allstate under her auto insurance policy's comprehensive coverage clause (respectively, the "Policy" and the "Clause") for damages sustained when Classic Collisionworks ("Collisionworks") auto body shop performed negligent and/or incomplete repairs to her car.  The trial court, determining that the Clause did not cover

---

[1]    The other defendants in this matter have not participated in this appeal.

negligent or unworkmanlike repairs, found that Rogers failed to state a claim upon which relief could be granted.  We affirm.

Because Rogers challenges the trial court's dismissal of her claims against Allstate on preliminary objections, we are limited to reviewing only the pleadings and documents attached thereto.  *See Weiley v. Albert Einstein Med. Ctr.*, 51 A.3d 202, 208 (Pa. Super. 2012).  We must accept as true every allegation of Rogers' complaint, and grant her all favorable inferences derived from those contentions.  *Id.*  Reviewing Rogers' operative complaint in this case yields the following account of the events that led up to her claim and this lawsuit.

In October 2007, Rogers was involved in a collision while driving her 2006 Nissan Altima.  At the scene of the accident, an unsolicited tow truck driver persuaded Rogers to allow him to transport her car to Collisionworks' premises.  Allstate adjuster Rob Cromie inspected the car and prepared an estimate of repairs.  Collisionworks agreed to complete all of the work specified in Cromie's estimate for the cost proposed.  Because Collisionworks did not partner with Allstate, Allstate tendered the amount of the estimate directly to Rogers, who paid Collisionworks the full amount specified in the Allstate estimate in advance.

On December 3, 2007, Rogers picked up her car from Collisionworks. She immediately noticed "problems with the vehicle's condition and operation, which she reported to Allstate."  Third Amended Complaint at 3

¶ 21. Collisionworks was non-responsive when Rogers sought to address the deficiencies directly with that business.

Rogers also attempted to open a claim with Allstate for the car's deficient condition, but Allstate denied coverage. In the denial letter that Allstate sent to Rogers' attorney, Allstate explained as follows:

> Your letter raises issue about "Allstate's 'approved' repair shops[."] Allstate does not require a vehicle owner to use an Allstate priority repair option ("PRO") shop. However, a benefit of using a PRO is that Allstate provides a life [*sic*] guarantee on repairs while the vehicle is owned. Furthermore, the Policy does not provide comprehensive insurance coverage for loss to a vehicle caused by negligent repairs. For the reasons stated above, Allstate does not pay diminished value claims to its insureds, and does not guarantee the quality of repairs at . . . Collisionworks, the repair shop of [Rogers'] choice.
>
> In partial loss situations such as the one involving the 2006 Altima, applicable state regulations require auto body repair shops to perform repairs, which will return the vehicle to its pre-accident condition. If there are issues about the quality of repairs performed at . . . Collisionworks, . . . [Rogers] may have rights and a cause of action against the repair shop.

Complaint, Exh. G. (Denial Letter, June 17, 2008), at 2. Via telephone, an Allstate representative told Rogers only that "she should have used an Allstate[-]'approved' repair shop." Complaint at 4 ¶ 26.

After Allstate denied coverage, Rogers arranged for an independent inspector, Charles Barone, to inspect her car.

> Mr. Barone found that the repairs that were performed [by Collisionworks] were performed in a grossly negligent, sub-standard and dangerous and unsafe fashion, and that some promised repairs were not performed at all, all of which rendered the vehicle unfit and unsafe as a result and a total and/or partial loss to the plaintiff.

*Id.* at 4 ¶ 28 (citing Complaint, Exh. C). Rogers characterized Collisionworks' actions as constituting "theft, larceny, conversion, malicious mischief and/or vandalism." *Id.* at 4 ¶ 31.

Based upon these events, and Allstate's denial of coverage, Rogers brought suit against Collisionworks, its owners, and Allstate. Against Allstate, Rogers asserted counts for breach of contract, negligence, fraud, violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1, *et seq.*, and insurance bad faith, 42 Pa.C.S. § 8371. When Allstate filed preliminary objections in the nature of a demurrer, Rogers filed a first amended complaint. The same pattern recurred twice more, ultimately leaving for the court's consideration the now-operative Third Amended Complaint ("the Complaint") and Allstate's preliminary objections thereto.

On January 12, 2009, the trial court sustained Allstate's preliminary objections and dismissed Rogers' claims against Allstate with prejudice. Rogers filed a timely motion for reconsideration, which the trial court denied. The case then proceeded to trial against Collisionworks, and a verdict was returned in Rogers' favor and against Collisionworks on December 17, 2013.

From there, the procedural history became more complicated. On December 27, 2013, Rogers filed a post-trial motion. However, before the trial court ruled on Rogers' post-trial motion, Rogers filed a notice of appeal

on January 16, 2014.[2] On January 21, 2104, the trial court directed Rogers to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Rogers timely complied on February 4, 2014. On March 11, 2014, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a). However, on June 27, 2014, this Court entered an order quashing Rogers' appeal as premature. On remand to the trial court, Rogers praeciped for the entry of judgment, which was entered on January 2, 2015. Rogers filed a new notice of appeal the same day. The trial court did not direct Rogers to file a new Rule 1925(b) concise statement, and, on January 20, 2015, the court issued a Rule 1925(a) supplemental opinion directing this Court's attention to its earlier Rule 1925(a) opinion. This case now is ripe for our review.

Rogers raises the following issues:

1. Did the trial court abuse its discretion or commit an error of law by sustaining Allstate's preliminary objections in the nature of a demurrer and finding that the subject comprehensive coverage under the subject automobile insurance policy did not cover fraudulent and/or negligent repairs, where the policy

---

[2] Because the trial court's ruling sustaining Allstate's preliminary objections did not resolve all claims as to all parties, Rogers was neither required nor permitted to appeal that order until the case was tried to conclusion and the trial court entered a final judgment. *See Pullman Power Prods. Of Canada Ltd. v. Basic Engineers, Inc.*, 713 A.2d 1169 (Pa. Super. 1998) (quoting *McKinney v. Albright*, 632 A.2d 937, 939 (Pa. Super. 19934)) ("The mere fact that some of the parties have been dismissed from a case, or that some of the counts of a multi-count complaint have been dismissed[,] is insufficient reason to classify an order as final."); *see also* Pa.R.A.P. 341(b).

stated that said comprehensive coverage covered all non-collision-related losses not excluded,[3] and there were applicable exclusions and no exclusions even asserted?

2.    Did the trial court abuse its discretion or commit an error of law by sustaining Allstate's preliminary objections in the nature of a demurrer and finding that the subject comprehensive coverage under the subject automobile insurance policy did not cover fraudulent and/or negligent repairs where the policy stated that said comprehensive coverage covered theft, vandalism, malicious mischief and larceny-related losses?

3.    Did the trial court abuse its discretion or commit an error of law by sustaining Allstate's preliminary objections in the nature of a demurrer and finding that Rogers' insurance bad faith claims were not legally viable?

4.    Did the trial court abuse its discretion or commit an error of law by sustaining Allstate's preliminary objections in the nature of a demurrer and finding that Rogers' fraud claims were not legally viable?

5.    Did the trial court abuse its discretion or commit an error of law by sustaining Allstate's preliminary objections in the nature of a demurrer and finding that Rogers' Unfair Trade Practices and Consumer Protection Law violation claims were not legally viable?

6.    Did the trial court abuse its discretion or commit an error of law by sustaining Allstate's preliminary objections in the nature of a demurrer and finding that Rogers' breach of contract claims were not legally viable?

Brief for Rogers at 6-7 (modified for clarity).

We begin with the applicable scope and standard of review:

"Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the

---

[3]    As is clear from the Policy excerpts reproduced below, the Clause contains no language supporting Rogers' use of the phrase "not excluded" in her statement of the questions presented.

trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court." ***De Lage Landen Fin'l Servs., Inc., v. Urban P'ship, LLC***, 903 A.2d 586, 589 (Pa. Super. 2006).

> "Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint." When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

> ***Hykes v. Hughes***, 835 A.2d 382, 383 (Pa. Super. 2003) (citations omitted).

***Haun v. Comm. Health Sys., Inc.***, 14 A.3d 120, 123 (Pa. Super. 2011) (citations modified).

Rogers' first, second, and sixth issues require this Court to interpret the scope of the Policy's coverage. The following principles apply to our interpretation of an insurance policy.

> [T]he task of interpreting [an insurance] contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

> ***Gene & Harvey Builders v. Penna. Mfrs. Ass'n***, 517 A.2d 910, 913 (Pa. 1986) (quoting ***Standard Venetian Blind Co. v.***

*Am. Empire Ins. Co.,* 469 A.2d 563, 566 (Pa. 1983)) (citations omitted). Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Co.,* 519 A.2d 385, 390 (Pa. 1986). This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. *See Gamble Farm Inn, Inc., v. Selective Ins. Co.,* 656 A.2d 142, 144 (Pa. Super. 1995); *Techalloy Co., Inc., v. Reliance Ins. Co.,* 487 A.2d 820, 823 (Pa. Super. 1985). We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. *Steuart v. McChesney,* 444 A.2d 659, 663 (Pa. 1982).

*Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). In interpreting a contract, we must not "assume that its language was chosen carelessly. Thus, we will not consider merely individual terms utilized in the insurance contract, but the entire insurance provision to ascertain the intent of the parties." *Telecom. Network Design v. Brethren Mut. Ins. Co.*, 5 A.3d 331, 335 (Pa. Super. 2010) (quoting *401 Fourth St., Inc,., v. Investors Ins. Group*, 879 A.2d 166, 171 (Pa. 2005)). An ambiguity does not exist simply because the parties disagree on the proper construction of a policy provision, and contested provisions should, whenever possible, be read to avoid ambiguity. *Neuhard v. Travelers Ins. Co.*, 831 A.2d 602, 605 (Pa. Super. 2003); *Tyler v. Motorists Mut. Ins. Co.*, 779 A.2d 528, 531 (Pa. Super. 2001).

All of Rogers' claims against Allstate hinge in the first instance upon the question of coverage. Thus, we begin by reviewing the relevant provisions of the Policy. Directly at issue is the scope of Coverage IIII, Auto

- 8 -

Comprehensive Insurance, *i.e.*, the "Clause." However, insofar as our interpretation of the Clause requires us to review it in the broader context of related provisions, we reproduce all of the sections of the Policy that inform the discussion to follow:

**Part 4     PROTECTION AGAINST LOSS TO THE AUTO**

\* \* \* \*

**COVERAGE DD**

**Auto Collision Insurance**

Allstate will pay for direct and accidental loss to your insured auto or a non-owned auto . . . *from a collision with another object or by upset of that auto or trailer . . . .*

***COVERAGE IIII***

**Auto Comprehensive Insurance**

*Allstate will pay for direct and accidental loss to your insured auto or a non-owned auto not caused by collision. Loss caused by missiles, falling objects, fire, theft or larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, and riot or civil commotion is covered. Glass breakage, whether or not caused by collision, and collision with a bird or animal is covered.*

\* \* \* \*

**Exclusions—What is not covered**

These coverages don't apply to:

3. any damage or loss resulting from any act of war, insurrection, rebellion or revolution.

\* \* \* \*

5. loss due to radioactive contamination.

6. damage resulting from wear and tear, freezing, mechanical or electrical breakdown unless the damage is the burning of wiring used to connect electrical

components, or the result of other loss covered by this policy.

7. tires unless stolen or damaged by fire, malicious mischief or vandalism. *Coverage is provided if the damage to tires occurs at the same time and from the same cause as other loss covered by this policy.*[4]

The Policy at 19-22 (italics added).

Based upon this language and Rogers' pleadings, the trial court found that Rogers had failed as a matter of law to state a claim upon which relief could be granted for breach of contract as well as Rogers' other claims. Regarding Rogers' breach of contract claim, the trial court noted that Allstate had no contractual arrangement with Collisionworks. Apparently in reliance upon "collision" rather than "comprehensive" coverage, the court further noted "[f]aulty repairs or poor workmanship by a third-party repair shop clearly does not involve a collision with another object." Trial Court Opinion ("T.C.O."), 3/11/2014, at 4.[5] The trial court also rejected Rogers' "suggestion that faulty repairs or poor workmanship by a third[-]party repair shop amounts to a 'theft' or 'vandalism' or 'malicious mischief.'" ***Id.***

_____

[4]   There are, in fact, twelve express exclusions. We include only those that have some resemblance to those expressly covered by the Clause.

[5]   This inference is compelled by the fact that the Clause specifically covers damage **not** caused by a collision. Because Rogers at no time sought collision coverage for the damages at issue, the trial court's references to this language are irrelevant.

Regarding Rogers' claim for bad faith under 42 Pa.C.S. § 8371, the trial court noted that such a claim can prevail only when the insurer lacks a reasonable basis for denying benefits. Citing its own basis for sustaining Allstate's preliminary objections to Rogers' breach of contract claim, the court noted that Allstate necessarily had a reasonable basis for denying coverage. T.C.O. at 6-7. The court rejected Rogers' UTPCPL and fraud claims for materially identical reasons. *Id.* at 7-8.

Manifest in the above excerpts from the Policy is the absence of any mention of negligent or faulty workmanship among the items enumerated in the Clause or among the express exclusions cited later in the Policy. Rogers maintains that the enumeration of covered causes is non-exhaustive, while Allstate maintains that it is exhaustive. For want of a clear reference to faulty workmanship, we must review the Clause in light of the entire Policy to determine whether the Policy is ambiguous such that it must be read in Rogers' favor. *See Gene & Harvey Builders*, *supra*.

Initially, we note that the Policy's express exclusions do not include anything pertaining to faulty or negligent workmanship. Thus, coverage depends upon our determination whether the Policy's plain language, read in its full context, necessarily excludes coverage for the loss to Rogers' car occasioned by Collisionworks' faulty or negligent workmanship. If it does not, then it is ambiguous on the question presented, and we must construe the Policy in favor of coverage. However, we must not "distort the meaning of the language or resort to a strained contrivance in order to find an

ambiguity." ***Madison Const. Co.***, 735 A.2d at 106 (quoting ***Steuart***, 444 A.2d at 663).

The Clause, which delineates the scope of comprehensive coverage, provides as follows:

> **Allstate will pay for direct and accidental loss to your insured auto or a non-owned auto not caused by collision**. Loss caused by missiles, falling objects, fire, theft or larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, and riot or civil commotion is covered. Glass breakage, whether or not caused by collision, and collision with a bird or animal is covered.

The Policy at 19 (emphasis added). The first sentence of this clause stands alone: Neither in itself, nor in the language that follows, is there any clear suggestion that the list that follows is exhaustive **or** non-exhaustive. However, the list that follows merely identifies items that "[are] covered."

We can distill from these covered items certain broader categories of harms subject to coverage. First, are weather-related risks, including earthquake, windstorm, hail, and flood. A second category refers to civil unrest, including missiles,[6] explosions, riot, or civil commotion. The third category encompasses criminal acts—theft or larceny, malicious mischief, or vandalism. The remaining harms—falling objects, fire, water, glass

---

[6] "Missiles" reach farther than mere civil commotion. The primary definition of missile is "[a]n object or a weapon that is fired, thrown, dropped [upon], or otherwise projected at a target." American Heritage College Dictionary 872 (3d ed. 1993). In any event, Rogers does not maintain that the loss at issue was caused by a missile.

breakage, collision with a bird or animal—are mere variations on these other categories.

Because we may not review the language in a vacuum, we must consider these covered losses in harmony, and attempt in good faith to discern in them the mutual intent of the contracting parties. In doing so, we are guided in part by the time-honored interpretive maxim, *expressio unius est exclusio alterius*, "the proposition that the mention of particular items [in a contract] implies the purposeful exclusion of other items of the same general character." **Commonwealth, Dep't of Transp. v. Mosites Constr. Co.**, 494 A.2d 41, 43 (Pa. Cmwlth. 1985); *see Ress v. Barnet*, 548 A.2d 1259, 1262 (Pa. Super. 1988). All of the sentences following the first sentence of the Clause are stated in the language of inclusion, even if they do not employ that word. Furthermore, they sketch out an undeniable sphere of coverage that primarily encompasses accidental losses, which is consistent with the first sentence of the Clause that expressly refers to "accidental loss." Based upon Rogers' own pleading, there can be no dispute that the harm at issue does not amount to an accident in its common sense.

The lone exception to this proposition is found in the express inclusion of losses resulting from theft, larceny, malicious mischief, vandalism, and perhaps riot and civil commotion. In arguing most robustly that Collisionworks' conduct reflected one or more of these causes, Rogers appears to recognize that she would be more likely to succeed by pleading that her loss arose from such intentional conduct rather than attempting to

fit her harm into one of the other, manifestly accidental covered causes, none of which come close to encompassing faulty workmanship. Brief for Rogers at 36-47.

The trial court rejected the proposition that the loss resulted from theft, larceny, malicious mischief, or vandalism for the following reasons:

> [Rogers'] alleges that she voluntarily gave and subsequently took back her vehicle. Therefore, any suggestion that faulty repairs or poor workmanship by a third[-]party repair shop amounts to a "theft" or "vandalism" or "malicious mischief" is legally insufficient. No "theft" or "vandalism" or "malicious mischief" occurred. The primary meaning of theft . . . is that it is a popular name for larceny. "By theft is meant larceny in its common[-]law sense." ***Hilliard Lumber Co. v. Harleysville Mut. Cas. Co.***, 103 A.2d 436, 437 (Pa. Super. 1954). "At common law . . . larceny consists in the taking and carrying away of the personal property of another with the mind of a thief, that is, with the specific intent to deprive the owner permanently of his property." ***Id.*** The Pennsylvania Superior Court applied these principles to policies insuring against loss caused by thefts in ***Hilliard Lumber***, *supra*. In ***Hilliard***, there was loss or damage following [an] unauthorized taking; in all of them it was recognized that whether or not such taking was a theft depended on the [insured] showing that there was a felonious intent, [the] intent to steal.[] [Rogers' complaint] contains no allegation that [Collisionworks] had any specific intent to steal, vandalize or cause mischief. . . . Further, this is not a case where [Rogers] alleged the car was set on fire, spray[-]painted with graffiti, or had its tires slashed.

T.C.O. at 4-5 (citations modified).

Malicious mischief, to which the trial court to some extent gives short shrift, is defined as "[t]he common[-]law misdemeanor of intentionally destroying or damaging another's property." Blacks Law Dictionary 1101 (10th ed. 2014). In Pennsylvania law, it is encompassed by the statutory

- 14 -

crime of criminal mischief. Under that statute, the only definitions among the six enumerated that even arguably could apply to Collisionworks' conduct in this case is "intentionally damages real or personal property of another." 18 Pa.C.S. § 3304(a)(5). In asserting a claim that, on the substance of the pleadings can be characterized only as faulty or negligent workmanship, Rogers does not adequately plead that Collisionworks acted with criminal intent. ***See*** 18 Pa.C.S. § 302(b)(1) ("A person acts intentionally with respect to a material element of an offense when[,] . . . if the element involves the nature of his conduct or a result thereof, **it is his conscious object to engage in conduct of that nature or to cause such a result**." (emphasis added)). That Collisionworks may have been unqualified to perform the work does not mean that it consciously sought to cause Rogers a loss as defined by the Clause, and Rogers has failed to plead a foundation from which such intentionality may reasonably be inferred.

Although we may not disregard a contract's clear meaning in favor of seeking its spirit, it nonetheless is surpassingly difficult to find in the language of the Policy a mutual expectation that the Policy would cover faulty workmanship. Nothing in the Policy alludes to or implies consideration of such a circumstance. The Clause's express inclusion of a broad array of categories of loss "implies the purposeful exclusion of other items of the same general character." ***Mosites Const.***, 494 A.2d at 43. Furthermore, our analysis leads to a common-sense conclusion: To construe the Policy otherwise would make auto insurers, or at least those who do not expressly

- 15 -

exclude faulty workmanship from coverage,[7] guarantors of all losses arising from faulty workmanship, whether as extreme as pleaded in this case or of the more common and benign variety. To suggest that Rogers had reasonable cause to expect that Allstate intended at the Policy's inception to cover such harms despite the Policy's silence on the topic is counterintuitive to say the least. Under these circumstances, we simply cannot accept Rogers' argument. Thus, we find that the trial court did not err as a matter of law in determining that the Policy did not provide coverage under the circumstances of this case.

This does not exhaust Rogers' claims. As noted, *supra*, she also contends that the trial court erred in dismissing her claims for negligence, fraud, bad faith, and violations of the UTPCPL. The trial court's principal basis for dismissing **all** of these claims upon the pleadings was its determination that Rogers' contract claim would not lie for want of coverage. We agree with the trial court that there was no coverage in this case. Thus, we also agree that Allstate did not act in bad faith, negligently, fraudulently, or in derogation of the UTPCPL.

_____

[7] It does not materially inform our analysis, but Rogers attached a sample policy from another provider that featured an exclusion that, by its terms, may have been effective in this case. Notably, it contains the sort of language that Allstate in so many words asks us to infer from the Policy. **See** Rogers' Supplemental Response in Opposition to the Preliminary Objections of Allstate to Rogers' Third Amended Complaint, Exh. E at 8 (excluding from comprehensive coverage "faulty workmanship by the insured or a facility chosen by the insured").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/22/2015