J-A15013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MATTHEW LIGHTNER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| CARLEVALE'S CUSTOM CARS, LLC D/B/A CARLEVALE CUSTOM CARS; GRANGE INSURANCE AND GINO M. FRATTAROLI | |
| APPEAL OF: GRANGE MUTUAL CASUALTY COMPANY | |
| | No. 331 MDA 2016 |

Appeal from the Order Entered January 29, 2016
In the Court of Common Pleas of Lebanon County
Civil Division at No(s): 2015-00331

BEFORE:  MOULTON, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.:                **FILED DECEMBER 15, 2017**

Grange Mutual Casualty Company ("Grange") appeals from the January 29, 2016 order entered in the Lebanon County Court of Common Pleas granting Matthew Lightner's motion for summary judgment and denying Grange's motion for judgment on the pleadings.  We reverse.

This matter, which involves the interpretation of a Grange insurance policy issued to Carlevale Custom Cars ("Carlevale"), arises out of the following relevant factual history.  Gino M. Frattaroli brought his 1970 Corvette to Carlevale to be restored.  Before completing the restoration, Carlevale invited Frattaroli to come to its place of business and conduct a test drive of

his vehicle. On July 24, 2013, Frattaroli conducted the test drive, accompanied by a Carlevale employee. While turning onto U.S. Route 322, Frattaroli's Corvette collided with Matthew Lightner, who was operating a motorcycle. Lightner was injured as a result of the collision. At the time of the collision, Frattaroli had not insured the vehicle.[1] Lightner sought liability coverage under Carlevale's insurance policy with Grange. Grange denied coverage.

The trial court summarized the procedural history of this matter as follows:

> [Lightner filed a complaint seeking] relief by asking this Court to declare the Corvette as a covered vehicle under the policy, declare Mr. Frattaroli as an insured and determine that Grange has a duty to defend and indemnify. Grange answered the complaint with new matter and cross claim/counterclaim on March 13, 2015, seeking declaratory relief. Grange seeks a declaration from this Court that Mr. Frattaroli is not insured under the policy and that Grange does not have a duty to defend or indemnify Mr. Frattaroli for the accident that occurred between Mr. Frattaroli and [Lightner].
>
> [After various additional pleadings,] Grange filed a motion for judgment on the pleadings on October 29, 2015. [Lightner] filed his motion for summary judgment on November 20, 2015. . . . Oral argument was heard on the motions on December 31, 2015.

Trial Ct. Op., 1/29/16, at 3. On January 29, 2016, the trial court granted

---

[1] Lightner also asserts that Frattaroli was without a valid driver's license at the time of the collision. Lightner's Br. at 4.

Lightner's motion and denied Grange's motion.[2]  On February 22, 2016,

Grange timely filed a notice of appeal.

Grange raises the following issues on appeal:

> 1. Did the trial court err in refusing to enter an order declaring that [Grange] had no duty to defend or indemnify Gino Frattaroli from the claims asserted against him by Matthew Lightner, when the insurance policy did not include Gino Frattaroli within the definition of an "insured?"
>
> 2. Did the trial court err in finding that the insurance policy was ambiguous as to whether the owners of "nonowned autos" were included within[] the definition of an "insured" and in declaring that [Grange] had a duty to defend Gino Frattaroli, when the policy plainly limits the definition of "insureds" to (1) [Carlevale] for any covered auto, and (2) anybody else while using a covered auto hired or borrowed by Carlevale, unless that person is the owner of the automobile?

Grange's Br. at 2 (answers below and suggested answers omitted).

In both of its issues on appeal, Grange argues that the trial court erred

in interpreting the insurance policy central to this matter.  The trial court found

that the policy language was ambiguous, and therefore construed it against

Grange as the drafter.

Because "[i]nterpretation of an insurance contract is a matter of law[,]

. . . [o]ur standard of review . . . is plenary."  ***Municipality of Mt. Lebanon***

---

[2] The trial court found that Frattaroli was an "insured" under the policy and that Grange had a duty to defend.  Order, 1/29/16.

*v. Reliance Ins. Co.*, 778 A.2d 1228, 1231 (Pa.Super. 2001).[3]  The goal in

interpreting the language of an insurance policy is "to ascertain the intent of

_____

[3] Our scope and standard of review in this case are well-settled.  First, for summary judgment:

> [O]ur scope of review is plenary, and our standard of review is the same as that applied by the trial court. . . . [A]n appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law.  In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

*Reinoso v. Heritage Warminster SPE LLC*, 108 A.3d 80, 84 (Pa.Super.) (alterations in original) (quoting *Mull v. Ickes*, 994 A.2d 1137, 1139–40 (Pa.Super. 2010), *app. denied*, 117 A.3d 298 (Pa. 2015).  Second, in reviewing the grant or denial of a motion for judgment on the pleadings:

> This Court applies the same standard as the trial court and confines its consideration to the pleadings and documents properly attached thereto. *Lewis v. Erie Insurance Exchange*, 753 A.2d 839, 842 (Pa.Super. 2000).  We review to determine whether "the trial court's action respecting the motion for judgment on the pleadings 'was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury.'" *Id.* (citations omitted).  We will affirm the grant of judgment on the pleadings only if "the moving party's right to succeed is certain and the case is so free from doubt that trial would clearly be a fruitless exercise." *Id.* (citations omitted).

*Municipality of Mt. Lebanon v. Reliance Ins. Co.*, 778 A.2d 1228, 1231 (Pa.Super. 2001).

the parties as manifested by the language of the written instrument." ***Id.*** at 1231-32 (quotation omitted). Accordingly, "our Supreme Court has instructed that the polestar of our inquiry . . . is the language of the insurance policy." ***Id.*** at 1232 (internal quotation omitted).

Further:

> When construing a policy, [w]ords of common usage . . . are to be construed in their natural, plain and ordinary sense . . . and we may inform our understanding of these terms by considering their dictionary definitions and where the language of the [policy] is clear and unambiguous, a court is required to give effect to that language. However, [w]here a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Thus, while a court will not distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity, it must find that contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.

***Id.*** (internal quotations and citations omitted).

Two conditions must be satisfied before Grange is required to defend and indemnify under the policy: (1) the resulting injury must arise from the use of a "covered auto"; and (2) the party seeking coverage must be an "insured."[4] Grange admits that the Vehicle was a "covered auto," as either a

_____

[4] The policy outlines the scope of coverage, in relevant part, as follows:

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":

   **a.** You for any covered "auto".

   **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   **(1)** The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

   **(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

"nonowned auto" or a "hired auto" as defined by the policy. Grange's Br. at 18.[5] Lightner, while agreeing that the Corvette is a "covered auto," contends that it does not qualify as a "hired auto" but rather as a "nonowned auto." Lightner Br. at 8.[6] The trial court concluded that the Frattaroli's Corvette was not a "hired auto" because it was not leased, hired, rented, or borrowed by Carlevale. Trial Ct. Op. at 8. Instead, the trial court found that the Corvette

---

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employee", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

Compl., Ex. A., Bus. Cov. Auto Form ("Policy"), Sec. II.A.1.

[5] The policy defines "nonowned autos," in relevant part, as "[o]nly those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business." Policy at 1. The policy defines "hired autos," in relevant part, as "[o]nly those 'autos' you lease, hire, rent or borrow." *Id.*

[6] Were the Corvette a "hired auto," then section II.A.1.b(1) of the policy would preclude a determination that Frattaroli was an "insured," as he was the vehicle's "owner."

was a "nonowned auto" that was used in connection with the business. *Id.* Because it is undisputed that Frattaroli owned the Corvette, and because Carlevale did not lease, hire, rent, or borrow it, we agree that Frattaroli's Corvette was a "nonowned auto," and therefore also a "covered auto," within the meaning of the policy.

We turn next to the question whether Frattaroli was an "insured" under the policy. Under the heading "Who Is Insured," the policy describes two potentially relevant classes of "insureds." The first is "You, for any covered 'auto'." *See* Policy at Sec. II.A.1.a. The second is "Anyone else while using with your permission a covered 'auto' you own, hire or borrow," followed by a list of five exceptions. *See id.* at Sec. II.A.1.b.[7] Grange contends that Frattaroli is not an "insured" because Frattaroli was not "you" as referenced in subsection a, and because Frattaroli's Corvette was not a vehicle that Carlevale "own[ed], hire[d] or borrowed," rendering inapplicable the "Anyone else" in subsection b.[8] We agree.

_____

[7] The policy also lists a third category, which neither party argues applies here: "Anyone liable for the conduct of an "insured" described above but only to the extent of that liability." *Id.* at Sec. II.A.1.c.

[8] Grange further contends that subsection b(1) of the "Who Is An Insured" section also precludes Frattaroli from being an "insured" under the policy because Frattaroli was the owner of the Vehicle. This argument is premised on Frattaroli's Corvette being a covered auto that Carlevale "own[ed], hire[d] or borrow[ed]."

First, the policy defines the "you" in subsection a as the "Named Insured" as listed in the Declarations page. *Id.* at 1. The "Named Insured" is Carlevale. *See* Compl., Ex. A., Sch. of Names and Addr. Nothing in the language of the policy suggests any broader meaning for "you."

Second, with respect to subsection b, this Court has already addressed an identical provision in another insurance policy. *See Bamber v. Lumbermens Mut. Cas. Co.*, 680 A.2d 901 (Pa.Super. 1996). In *Bamber*, we concluded that because the vehicle in question "was not owned, hired, or borrowed" by the policyholder, the entirety of subsection b, "including the exclusions, does not apply." *Id.* at 903. Likewise, the policyholder here, Carlevale, did not own, hire, or borrow Frattaroli's Corvette. Subsection b, therefore, does not apply.

Lightner does not directly challenge the section-specific analysis set forth above. Instead, he argues that the policy, taken as a whole, is ambiguous as to whether an owner, like Frattaroli, of a "nonowned auto" used in connection with Carlevale's business is an "insured" under the policy. The trial court agreed that the policy was ambiguous on that score. It therefore construed the policy against Grange as the drafter of the document and held that Frattaroli qualified as an "insured."

We disagree with the trial court's analysis and conclusion. Rather,

> We are mindful . . . that a court must not distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. Instead, we must determine whether an ambiguity exists based upon the particular set

of facts presented. And, simply because the parties do not agree on the proper construction to be given a particular policy provision does not render the contract ambiguous. Courts should read policy provisions to avoid an ambiguity if possible.

*Tyler v. Motorists Mut. Ins. Co.*, 779 A.2d 528, 531 (Pa.Super. 2001) (internal quotations and citations omitted). The "Who Is An Insured" provision explicitly states that Carlevale is an "insured" for any "covered auto," which, as we have discussed, includes "nonowned autos." Here, the relevant terms of the insurance policy are unambiguous: where an injury arises out of the use of a "nonowned auto," the only "insured" is Carlevale.

Lightner argues that such an interpretation is illogical because Carlevale, as a "corporate entity[,] . . . does not drive a car." Lightner's Br. at 14. Lightner further suggests that it would be "an unacceptable interpretation of the policy" such that had Carlevale's employee been driving the Vehicle, Carlevale would be covered for liability purposes and the employee would not. *Id.* at 15.[9] Lightner urges that "[i]t is not rational to say that [nonowned

_____

[9] While Lightner is correct that, pursuant to the terms of the insurance policy, Carlevale's employee would not be an "insured," the employee's acts would still be covered by the policy under a theory of *respondeat superior*. "Under the doctrine of *respondeat superior* recovery is sought on the basis of vicarious liability. An employer is vicariously liable for the wrongful acts of an employee if that act was committed during the course of and within the scope of employment." *Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 39 (Pa.Super. 2000). Thus, in a scenario where Carlevale's employee, in the course and scope of his employment, injured a party with the use of a "nonowned auto," Carlevale's vicarious liability would trigger coverage under the policy.

autos] are covered in connection with Carlevale's business, but to then assert an argument that no individuals driving the car have coverage." *Id.* Such an interpretation would, according to Lightner, render coverage for nonowned autos a "nullity." *Id.*

We are unpersuaded. As Grange points out, coverage for nonowned autos protects the policyholder in cases of *respondeat superior*; for example, had Carlevale's employee been driving Frattaroli's Corvette, Carlevale would have been covered. *See supra* note 9. That the collision here involved a driver who had not insured his vehicle is unfortunate. But where the terms of coverage are explicit, we will not read an ambiguity into the insurance policy where none exists. *See Byoung Suk An v. Victoria Fire & Casualty Co.*, 113 A.3d 1283, 1288 (Pa.Super.) ("[C]ourts should not under the guise of judicial interpretation, expand coverage beyond that provided in the policy.") (internal quotation omitted), *app. denied*, 130 A.3d 1285 (Pa. 2015).

Accordingly, we conclude that the policy was not ambiguous and that Frattaroli was not an "insured" under the policy. Therefore, we reverse the order granting Lightner's motion for summary judgment. Furthermore, because Frattaroli's status is clear, Grange's "right to succeed is certain and the case is so free from doubt that trial would clearly be a fruitless exercise." *See Mt. Lebanon*, 778 A.2d at 1231. Accordingly, we reverse the trial court's order denying Grange's motion for judgment on the pleadings and direct the trial court to enter judgment in Grange's favor.

- 11 -

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/15/2017